No. 59,809

STATE OF KANSAS, *Appellee,* v. WALTER CUMMINGS, *Appellant.*
(744 P.2d 858)

Opinion filed October 30, 1987.

*Jessica R. Kunen,* deputy appellate defender, argued the cause, and *Benjamin C. Wood,* chief appellate defender, was with her on the brief for appellant.

*Wesley K. Griffin,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a criminal action. Walter Cummings appeals his conviction of second-degree murder, K.S.A. 21-3402.

The relevant facts are as follows: On Christmas Eve, a friend of Walter Cummings' returned a handgun borrowed from Cummings. Cummings put the gun in his belt. Later that evening, Cummings and his girlfriend, Wanda Sanders, stopped by the apartment of J. C. Watts to wish him Merry Christmas. On the first trip, no one was home, but on the second trip, they found the apartment full of revelers. The group consisted of J. C. Watts and his girlfriend and Larry and Sherman Hale and their girlfriends. That group, together with Cummings and Wanda, filled the small apartment. They had all been drinking beer and whiskey and were intoxicated. The Hale brothers were getting belligerent. They took their resentments out on Walter Cummings by questioning him about his personal life in a very unfriendly manner. One of them asked if he was a "loner."

Wanda had gone to the bathroom. While there she heard loud, angry voices directed to Cummings. This irritated her. She returned from the bathroom and challenged Larry Hale's right to ask Cummings such questions. Larry Hale responded by saying freedom of speech gave him the right. Wanda then expressed her desire to leave. Larry Hale asked her to take "this pussy" (Cummings) with her. At this juncture, Sherman Hale joined the fray. He ordered Wanda to sit down, to act like a lady and not like a man or a "butch," and to stay out of the men's conversation.

Sherman further stated he could not tell if Wanda was a man or a woman. This bothered Wanda. She responded by walking toward Sherman and removed her hat and jacket to prove she was a woman. Sherman gave her a shove into the corner of the room. Cummings stepped between Sherman and Wanda and raised his arms above his head to prevent Sherman from hitting Wanda. While doing this, he was hit in the head with a beer can Sherman was holding. The blow knocked Cummings into the near bedroom. He blacked out for a few seconds. The bedroom was dark. When Cummings came to, he saw two men coming toward him out of the light. He felt liquid on his face. He thought it was blood. He pulled his gun from his belt and asked the approaching men to stop; he fired once, paused, then fired twice more. The Hale brothers both fell from the gunshots. Sherman was hit in the face and survived. Larry was shot in the side of the leg and in the back of the head. He was killed.

Wanda testified she picked herself up from the corner of the front room where Sherman had knocked her. She saw Sherman go in the bedroom and kick the feet and legs of the unconscious Cummings. Wanda told Sherman to stop. Larry Hale, who was following Sherman Hale into the bedroom, shoved her into the bathroom. She stated she heard gunshots as she fell.

J. C. Watts left to call the police. Cummings and Wanda, hysterical and shaky, left in their car, drove across the river on 7th Street, and threw the gun into the river as they crossed. They drove to the home of J. D. Burns, a friend of Cummings'. Cummings told J. D. what had happened, stating he had fired in self-defense. Also, he had J. D. examine his head for possible injury. No injury was found. After a discussion on Cummings' course of action, he decided to go home and wait for the police.

Cummings was charged with aggravated battery, K.S.A. 21-3414, and second-degree murder, K.S.A. 21-3402. He was acquitted of aggravated battery and convicted of second-degree murder.

The first issue is whether the trial court denied Cummings' due process and Sixth Amendment right to call witnesses on his behalf by refusing to allow J. D. Burns to testify.

At the pretrial conference, Cummings did not inform the State he intended to call Burns as a witness, though he had agreed to

give such notice. We have held parties are generally bound by agreements made at pretrial conferences held pursuant to K.S.A. 22-3217. *State v. Bright*, 229 Kan. 185, 190, 623 P.2d 917 (1981). The decision whether to allow previously undisclosed witnesses to testify lies within the sound discretion of the trial court. 229 Kan. at 192.

Despite these general rules, *Bright* also held automatic exclusion to be error. 229 Kan. at 191. *Bright* gives rules to be followed by trial courts considering whether to allow a defendant to call a previously undisclosed witness. In order for a trial court's discretion to be deemed sound, it must:

"(1) Inquire why the witness or witnesses were not disclosed;

"(2) determine when the witness first became known to defense counsel, and whether the nondisclosure was willful or inadvertent;

"(3) determine whether the proposed testimony is trivial or substantial, whether it goes to an important or minor issue;

"(4) determine the extent of prejudice to the State, and the importance of the witness to the defense;

"(5) determine any other relevant facts;

"(6) grant the State a recess if prejudice can be avoided or reduced by such action; and

"(7) avoid imposing the severe sanction of prohibiting the calling of the witness if at all possible. This should be viewed as a last resort." 229 Kan. at 194.

Cummings' attorney told the court Burns would corroborate Cummings' testimony that he went to Burns' house after the shooting and asked him to see if his head was cut. The defense attorney stated Burns was not an important witness, and the State could talk to him in the hallway before he testified. The State argued Burns was going to support Cummings' claim of self-defense, which made him a very important witness.

An additional problem was that Burns had sat through the previous day's trial. Cummings' attorney argued this was not a problem because the testimony concerned the shooting, whereas Burns would only testify about what happened after the shooting. However, Burns' testimony would be used to prove the truth of Cummings' testimony that he believed his head had been injured before the shooting. This argument is irrelevant since there was no order segregating witnesses.

It appears both the State and defense knew of Burns' existence because Cummings mentioned him in the statement he gave the

day after the shooting. The defense attorney's failure to list Burns as a witness was an inadvertent oversight.

Burns' knowledge of Cummings' statement to him shortly after the shooting is a highly relevant fact going to intent. The question is whether Cummings knowingly and intelligently waived his constitutional right to call witnesses in his behalf and if the trial judge abused his discretion in refusing to admit the testimony. See *Bright*, 229 Kan. at 194. Cummings now argues the testimony would have been important corroboration of his explanation for his flight from the scene as well as his belief he shot in self-defense. This was not argued to the trial court, however, neither during the trial nor in Cummings' motion for a new trial.

We hold it was error for the trial court not to have questioned Cummings' attorney more closely as to the circumstances of the nondisclosure and possible alternatives to total prohibition of Burns' testimony. However, in light of the fact the same testimony Burns would have given was elicited from Wanda, thus making Burns' evidence merely cumulative, we find the error harmless.

The next issue is whether Cummings' right to a fair trial was denied because the prosecutor misstated a fact in closing argument.

During closing argument, the prosecutor argued that even if the jury believed Cummings when he said Sherman was an aggressor, his testimony did not show Larry to be an aggressor. He argued Larry simply stepped to the door to push his pregnant girlfriend out of the gunfire when he was "shot in the back of the leg and back middle of his head." Dr. Van Thulenar had clearly stated the bullet to Larry's leg both entered and exited the *front* of the thigh. The prosecutor then repeatedly emphasized the shot to the back of the head, but did not again mention a shot to the back of the leg.

Defense counsel did not object and seemed unaware of the misstatement as he gave his rebuttal. In Instruction No. 2, the court reminded the jury remarks made by counsel not supported by the evidence should be disregarded.

The stating of a fact contrary to the evidence is clearly improper. *State v. Bradford*, 219 Kan. 336, 339-40, 548 P.2d 812 (1976). Cummings cites *State v. Wilson*, 188 Kan. 67, 360 P.2d

1092 (1961), in support of his contention the prosecutor's incorrect statement was so prejudicial to his claim of self-defense the trial court should have stopped the argument *sua sponte*. *Wilson*, however, involved a prosecutor who tried to inflame the passions of a jury in a trial for the violent rape of a young girl by reading from an account of a controversial case where a similar young victim lost her mind. The defense attorney objected to the reading of the account but was overruled. 188 Kan. at 71.

*State v. Gutekunst*, 24 Kan. 252, 254 (1880), announced in dicta that a trial court should not wait for an objection when an attorney indulges in "vituperation and abuse" based on facts not in evidence.

Defense counsel did not object during trial in *State v. Netherton*, 128 Kan. 564, 279 Pac. 19 (1929), to closing remarks about the defendant's wealth and public knowledge of his guilt. Counsel did, however, object before the jury finished its deliberations. This court found because it was still possible at that point to instruct the jury the trial court should have admonished the jury to disregard the remarks. 128 Kan. at 572-75. In the case before us, defense counsel did not object even in his motion for new trial.

Cummings cites two cases, *Berger v. United States*, 295 U.S. 78, 79 L. Ed. 1314, 55 S. Ct. 629 (1935), and *Mason v. United States*, 719 F.2d 1485 (10th Cir. 1983), which hold statements made in closing argument can be plain error. Both of these cases involved prosecutors giving their personal opinions. In *Mason*, the Court found the remarks not grave enough to be reversible error.

None of the cases cited support a holding of reversible error. While the prosecutor's statement was inaccurate and thus improper, the misstatement was not one of personal opinion; it was not repeated, did not reach the level of abuse, and was not contemporaneously objected to. *State v. Bird*, 238 Kan. 160, 179, 708 P.2d 946 (1985). This issue is without merit.

Appellant next raises three separate areas wherein he claims error was made in instructions to the jury. He made no objections to the instructions at trial or in his motion for a new trial. K.S.A. 22-3414(3) precludes a party from claiming instruction error when not objected to at trial, unless the instruction is clearly

erroneous. See *State v. Scott*, 210 Kan. 426, 434, 502 P.2d 753 (1972). Let us examine the challenged instructions under this standard.

The court first instructed the jury on the elements of second-degree murder. The court instructed the jury it must decide each charge separately, uninfluenced by its decision on any other charge. The court stated it did not mean in any way to indicate a preferable verdict. The court stated the jury could find Cummings guilty of second-degree murder, voluntary manslaughter, or not guilty. In Instruction No. 9, it stated: "When there is a reasonable doubt as to which of two or more offenses the defendant is guilty, he may be convicted of the lesser offense only."

The court continued on to the elements of voluntary manslaughter, in Instruction No. 10, by using the transition statement recommended by PIK Crim. 2d 56.05: "If you cannot agree that the defendant is guilty of murder in the second degree, you should then consider the lesser included offense of voluntary manslaughter."

Cummings contends Instructions No. 9 and No. 10 contradict each other. He argues the transition statement in Instruction No. 10 might cause the jury to stop after considering second-degree murder without considering the lesser charge. Cummings' reliance on *State v. Trujillo*, 225 Kan. 320, 590 P.2d 1027 (1979), as support for error is misplaced. In giving Instruction No. 9, the trial court did what *Trujillo* required.

The trial court's instructions adhere to both *Trujillo* and the Pattern Instructions for Kansas. They are not clearly erroneous. Thus Cummings' lack of objection precludes him from claiming error. K.S.A. 22-3414(3).

Cummings next argues Instruction No. 16 could have coerced an undecided juror into going along with the majority in order to be "fair and reasonable." The instruction given by the trial court follows, in all material respects, PIK Civ. 2d 1.07 and the instruction discussed in *State v. Hall*, 220 Kan. 712, 556 P.2d 413 (1976). *Hall* held such an instruction not to be coercive, but rather "a fair statement concerning . . . the proper attitude which the jurors should maintain." 220 Kan. at 718. In encouraging a unanimous verdict, the instruction does not favor the

State over the defendant: the jurors might just as easily reach a unanimous verdict for the defendant.

The court also, in Instruction No. 16, told the jurors that each must vote "according to his honest judgment" and predicated the duty to try and reach a unanimous agreement upon the ability to "do so without violence to your individual judgment."

This instruction also does not reach the clear error required by K.S.A. 22-3414(3) where a contemporaneous objection is not made.

Cummings' final issue is that the trial court erred by not instructing the jury on involuntary manslaughter as a lesser included offense of second-degree murder. He argues the jury could have found his shooting to be manslaughter, as a lawful act (self-defense) done in an unlawful or wanton manner, without intent to kill. See K.S.A. 1986 Supp. 21-3404; *State v. Gregory*, 218 Kan. 180, 185-86, 542 P.2d 1051 (1975).

Appellant's lack of objection at trial is not the obstacle it was to his previous arguments. Here, the trial court had an affirmative duty to instruct on all lesser included offenses supported by the evidence. K.S.A. 1986 Supp. 21-3107(3); *State v. Marks*, 226 Kan. 704, 713, 602 P.2d 1344 (1979); *State v. Weyer*, 210 Kan. 721, 725-27, 504 P.2d 178 (1972).

The question now to be considered is whether the evidence justified a manslaughter instruction. *State v. Davis*, 236 Kan. 538, 542, 694 P.2d 418 (1985). The evidence supporting such an instruction must be considered in the light most favorable to Cummings. *State v. Royal*, 234 Kan. 218, 221-22, 670 P.2d 1337 (1983).

It need not be strong evidence; indeed, it may be weak and based only on the testimony of the defendant. *State v. Clark*, 218 Kan. 18, 21, 542 P.2d 291 (1975). The test is whether the evidence might reasonably cause a jury to convict the defendant of the lesser charge. *State v. Crispin*, 234 Kan. 104, 109, 671 P.2d 502 (1983). See Note, *The Doctrine of Lesser Included Offenses in Kansas*, 15 Washburn L.J. 40, 51 (1976).

In *State v. Childers*, 217 Kan. 410, 417, 536 P.2d 1349 (1975), this court held it was error not to instruct on involuntary manslaughter where a defendant shot an unarmed man in the dark and repeatedly kept shooting at the victim as he ran away. 217 Kan. at 411-12, 417. The defendant testified he did not intend to

kill the victim; only to scare him away. We held this evidence was sufficient to require the instruction. We noted the defendant in *Childers* had repeatedly testified to his lack of intent. Such repeated testimony differs from this case in which there is simply a lack of testimony that Cummings intended to kill Larry.

This court held in *State v. Garcia*, 233 Kan. 589, 608-09, 664 P.2d 1343 (1983), that a defendant is required to give positive testimony for the express purpose of proving a version of the shooting which differs from the version put forth by the State. In *Garcia*, however, the defendant relied on an insanity defense. 233 Kan. at 609-10. See also *State v. Marks*, 226 Kan. 704 (defendant's theory was that he was not present during the felony murder).

This is not one of those cases where the defendant's evidence supports a clear case of either guilt or innocence, as would be required by an alibi or insanity defense. Rather, Cummings pled self-defense, and his testimony supports a possible finding he may have acted in self-defense, though in a wanton or unreasonable manner.

First, there is some evidence Cummings feared serious injury. Although neither Cummings, J. D. Burns, nor a police officer could find any injury to Cummings' head, there was some testimony that he was struck by Sherman Hale's full beer can. Cummings testified he thought Sherman hit him with the can. Wanda said she saw it. Both Larry's girlfriend, and more reluctantly, Sherman, admitted there was a possibility the beer can hit Cummings when it "flew" out of Sherman's hand as Wanda hit him. Although it was beer rather than blood Cummings felt on his head, there is justification for his stated fear his "skull was busted."

But, there was some contradictory testimony. Sherman's girlfriend said Larry was in the bedroom fighting with Sherman, Wanda, and Cummings. Later she changed her story completely, agreeing that only Sherman had been in the bedroom with Cummings and Wanda, while Larry stayed in the living room and only approached the doorway just before he was shot.

Wanda variously testified Sherman was in the room kicking Cummings while Larry attempted to enter; Larry was in the

room kicking Cummings while Sherman attempted to enter; or both were in the room kicking Cummings.

Dr. Van Thulenar testified Larry had an injury to his finger and bruises on his face which were not more than a couple of hours old when he died. There was no evidence Larry had these injuries before the fight. This is some evidence Larry participated in the altercation.

Cummings only remembers coming to, feeling the liquid running down his face, and seeing two male figures rushing toward him. He does not remember fighting Larry. He testified he yelled "stop" before the first shot and before the second shots. Cummings does not deny the shooting was intentional, but he argues on appeal that the killing was unintentional. Thus, his actions might be found to be involuntary manslaughter. *State v. Staab*, 230 Kan. 329, 340, 635 P.2d 257 (1981).

The State argues Cummings had no reason to fear Larry once he shot him in the leg. But Cummings testified both men kept coming after the first shot. The doctor was not able to tell which shots struck first, but did say they were fired in close succession.

We hold there is sufficient evidence of self-defense to require an instruction on involuntary manslaughter as a lesser included offense of second-degree murder. *State v. Childers*, 217 Kan. 410.

The judgment of the trial court is reversed and this case is remanded for a new trial.

MILLER and McFARLAND, JJ., dissenting.