No. 64,223

STATE OF KANSAS, *Appellee,* v. ARCHIE E. OWENS, JR., *Appellant.*

(807 P.2d 101)

Opinion filed March 1, 1991.

*Reid T. Nelson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the briefs for appellant.

*Nick A. Tomasic*, district attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

Six, J.: Archie E. Owens, Jr., appeals his jury convictions of first-degree murder (K.S.A. 21-3401) and theft over $500 (K.S.A. 21-3701). We have jurisdiction under K.S.A. 22-3601(b)(1). This appeal considers as primary issues the defendant's alleged amnesia and his competency to stand trial. Ancillary issues concern the validity of jury instruction PIK Crim. 2d 52.13 concerning a defendant's choosing not to testify and of the trial court's refusal to instruct on the lesser included offense of misdemeanor theft.

We find no error and affirm.

Owens was a codefendant with Shari Bierman, the murder victim's sister. Bierman was also convicted of first-degree premeditated murder and theft over $500. We affirmed Bierman's conviction in *State v. Bierman*, 248 Kan. 80, 805 P.2d 25 (1991).

### Facts

The facts relating to the murder of the victim, Syndi Bierman, are contained in *State v. Bierman*. We have set out additional facts relating to the issues Owens asserts in the instant case.

Tambi Lewis, the woman with whom Owens lived, pled guilty to aiding a felon. She was at Owens' apartment the night of February 18, 1989, and the morning of February 19, 1989 (the

victim's body was found in the early hours of February 19, 1989). She testified that Owens, Joseph Hernandez, and Shari Bierman dropped off Bierman's children at Owens' apartment shortly after midnight. Owens, Hernandez, and Bierman said they were going to burglarize Bierman's parents' house in Wyandotte County. The three returned later with the stolen property.

Lewis testified that Owens did not seem to be intoxicated or under the influence of drugs when he left to burglarize the Bierman house or when he returned with the stolen property. She talked with him for some time. Owens made sense and knew what was going on.

Lewis testified that on the Sunday afternoon or evening of February 19, 1989, Owens and Hernandez told her that they had beaten Syndi "real bad." Lewis and her friend, Tina Reilly, accompanied Owens and Hernandez when they left Kansas City on the evening of February 19. She testified that during their escape trip out of Kansas City, Owens kept saying that he did not know if Syndi was dead or alive and that he did not see how anybody could survive such a beating.

Lewis further testified that Owens told her that he had left his motorcycle chain, which he wore through his belt loops, at either his apartment or the Bierman house. Lewis identified a chain found in Bierman's bedroom as belonging to Owens.

Tina Reilly was also present at Owens' apartment when Owens, Hernandez, and Bierman returned with the stolen property. Reilly testified that she saw Owens washing his hands. She was not sure but thought that Owens had blood on him. Reilly stated that Owens did not appear to be under the influence of any type of drugs. Reilly testified that during their trip out of Kansas City, Hernandez said that they (Hernandez, Owens, and Bierman) had beaten Syndi and that Hernandez had cut Syndi's throat. She stated Owens did not want Hernandez to tell her.

Hernandez testified that during the night of the crime he drank gin and beer and Bierman smoked marijuana. He stated that Owens did not drink alcohol, smoke marijuana, or use any type of drugs during that time period.

Bierman testified that Hernandez drank alcohol and that she smoked marijuana, but that Owens did not smoke marijuana and was not "out of it" on drugs.

Hernandez and Reilly also lived with Owens at his apartment. Hernandez, Reilly, Lewis, and Owens were at Lewis' father's house when the police searched Owens' apartment on Sunday, February 19, 1989. Through a neighbor, they learned that police were at the apartment. They left town in Lewis' car, which broke down in Oklahoma.

Reilly and Hernandez were apprehended in Oklahoma. Owens and Lewis hitchhiked to Arizona. Owens turned himself in to the FBI in Arizona and was returned to Kansas City. Lewis was also apprehended and returned to Kansas City.

### Alleged Amnesia

Owens and the State both moved for a determination of his competency to stand trial. The trial court ordered that Owens be examined by the Wyandot Mental Health Center (Health Center).

The Health Center filed its report with the trial court. The report included the following:

"Clinical Interview

"In reference to the date and time of the alleged act, *[Owens] reported* he had consumed a substance ('PCP'), assumedly Phencyclidine. *He stated* that due to the intoxicating effect of the substance that he had no recollection of that particular evening. . . .

"Competency to Stand Trial Examination

"The client was oriented to time, place, person and situation. He stated he had an attorney but saw little sense in working with him so as to provide the best possible defense, because he feels he will be found guilty regardless of defense counsel's efforts. His comprehension and knowledge of courtroom procedures and terminology was basic, yet sufficient. *He has the ability, if he so desires, to work with his attorney to provide the best possible defense.* He is cognizant of the charges against him and to the gravity of the situation. He comprehends right from wrong action and understands the concepts of guilt and innocence.

"Mental Status Examination

". . . Remote and recent memory functions were intact except for *his report* of memory loss at the time of the alleged crime." (Emphasis added.)

The report concluded:

"Summary

"A twenty year old Caucasian male was evaluated to assess his competency to stand trial. The Clinical Interview found him to be negative, focused and direct. The Competency to Stand Trial Examination proved him to be fully oriented, able to work with his attorney to provide the best possible defense and aware of courtroom procedures and terminology. The Mental Status

Examination reveals an individual *with memory functions intact,* not depressed and not psychotic.

"In consideration of the results of this evaluation, Archie E. Owens, Jr. is found competent to stand trial." (Emphasis added.)

Owens moved for a further determination of competency and for funds for psychiatric services. In this motion, Owens stated that he was suffering from amnesia, either hysterical, drug induced, or feigned and that he could not remember the events at the time of the crime.

During the hearing on the motion, Owens' counsel stated that a psychiatrist, Dr. Claude Werth, and a sociologist had examined Owens. Owens requested funds for additional tests, stating that Dr. Werth advised taking the additional tests. It was claimed that these tests could possibly retrieve Owens' memory or eliminate the possibility of feigned amnesia. The State opposed the motion, arguing that the Health Center had found Owens competent. The Health Center report was the only evidence before the trial court.

In response to Owens' motion, the trial court appointed two psychiatrists as a commission to evaluate Owens' competency and to report to the court. The doctors took an oath to examine Owens and determine whether "he is, at this time, able to comprehend his position and make his defense to the charges." Both doctors found Owens competent to stand trial.

Following this second determination of competency, Owens filed a motion for a jury of six persons to assist in the determination and for psychiatric treatment to restore his memory.

Owens presented an affidavit from Dr. Werth which stated that Owens claimed to be under the influence of marijuana and PCP the morning of the crime. Owens claimed to have a "memory gap" between the time of the sexual encounter with Bierman and his waking up the next morning. Dr. Werth concluded the memory gap made it "virtually impossible" for Owens to aid in his defense, consequently, making him incompetent to stand trial. Dr. Werth recommended that Owens be admitted to Larned State Hospital where "a number of diagnostic methods can be employed which *may* aid in the retrieval of suppressed or repressed memory processes." (Emphasis added.)

After taking note of the court-appointed psychiatrists' reports, the trial court denied the motion.

The trial court found Owens competent to stand trial.

The first day of trial, Owens filed and argued a motion to dismiss. In the written motion Owens stated: "Defendant further contends that he *is and has been competent to stand trial,* and that the failure to be brought to trial, and the delay in doing so, is not the result or fault of the Defendant." (Emphasis added.) The trial court denied the motion.

Owens filed a motion for a new trial, again raising the issue of Owens' competency. The trial court overruled the motion.

Owens argues that his due process rights under the Fourteenth Amendment were violated because his amnesia rendered him incompetent to stand trial. Owens claims that because the trial court (1) failed to make a finding whether Owens had amnesia and (2) used an incorrect standard to determine competency, the case should be remanded for further findings or the conviction should be reversed because Owens was incompetent to stand trial.

Owens relies on *Wilson v. United States,* 391 F.2d 460 (D.C. Cir. 1968), and *State v. Blake,* 209 Kan. 196, 495 P.2d 905 (1972).

A significant factual distinction exists between *Wilson* and the instant case. In *Wilson,* the State conceded that Wilson suffered permanent retrograde amnesia resulting from a head injury. Here the State claims Owens' alleged amnesia is a sham.

Because Wilson had a rational understanding of the charges against him and suffered no mental disorder aside from the amnesia, the trial court found him competent to stand trial.

On appeal, Judge Skelly Wright, speaking for a divided court, rejected the view that amnesia renders a defendant incompetent per se to stand trial. Judge Wright adopted a case-by-case approach, stating: "[T]he question must come down to whether, 'in light of the personal intellectual or emotional deficiencies of the accused [defendant] can perform the functions essential to the fairness and accuracy of the particular proceedings in which he is presently involved.' " 391 F.2d at 463.

The test of competency must be whether the defendant has sufficient " 'present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a

rational as well as factual understanding of the proceedings against him.' " 391 F.2d at 463 (quoting *Dusky v. United States,* 362 U.S. 402, 4 L. Ed. 2d 824, 80 S. Ct. 788 [1960]).

*Wilson* lists six factors to aid the trial court in making findings concerning the effect of amnesia on the trial fairness issue. These factors are:

"(1) The extent to which the amnesia affected the defendant's ability to consult with and assist his lawyer.

"(2) The extent to which the amnesia affected the defendant's ability to testify in his own behalf.

"(3) The extent to which the evidence in suit could be extrinsically reconstructed in view of the defendant's amnesia. Such evidence would include evidence relating to the crime itself as well as any reasonably possible alibi.

"(4) The extent to which the Government assisted the defendant and his counsel in that reconstruction.

"(5) The strength of the prosecution's case. Most important here will be whether the Government's case is such as to negate all reasonable hypotheses of innocence. If there is any substantial possibility that the accused could, but for his amnesia, establish an alibi or other defense, it should be presumed that he would have been able to do so.

"(6) Any other facts and circumstances which would indicate whether or not the defendant had a fair trial." 391 F.2d at 463-64.

*Wilson's* case was remanded for the trial court to make these findings.

Owens contends that we adopted in *Blake,* 209 Kan. 196, the *Wilson* approach requiring post-trial findings and consideration of the six factors. Owens' contention is not correct. Again we note a factual distinction between *Blake* and Owens' case. In *Blake* the State made no contention that Blake's amnesia was a sham. The evidence was unrefuted that Blake suffered from hysterical amnesia resulting in his inability to remember any of the critical events at the time of the murder of his small daughter. 209 Kan. at 198.

In *Blake,* the court stated: "We are persuaded that a case by case evaluation of the fair-trial effect of amnesia, adopted explicitly by the majority in *Wilson* and implicity by this court in [*State v.*] *Severns* [184 Kan. 213, 336 P.2d 447 (1959)], is the sounder rule; we again reject the *per se* approach." 209 Kan. at 200.

Although we reversed *Blake* on other grounds, we found that, under the circumstances of the case, Blake's amnesia did not prevent him from making a "rational" defense. We did not re-

mand for findings nor did we discuss the six *Wilson* factors. In *Blake,* we adopted the fair-trial effect of amnesia case-by-case approach rather than the per se approach. *Blake* does not mandate, for every alleged amnesia case, the post-trial findings discussed in *Wilson.* In *Blake,* we held that the trial court's implied finding that Blake was competent to stand trial was supported by the evidence. 209 Kan. at 201.

Amnesia alone should not supply the basis for declaring a defendant incompetent to stand trial. Amnesia is a factor to be considered in determining whether the defendant is able to meet the test of competency to stand trial and to obtain a fair trial. *State v. Gilder,* 223 Kan. 220, Syl. ¶ 3, 574 P.2d 196 (1977). See Annot., 46 A.L.R.3d 544. The danger of false claims is great. *Fajeriak v. State,* 520 P.2d 795, 802 (Alaska 1974). Amnesia can easily be feigned. *State v. McClendan,* 103 Ariz. 105, 108, 437 P.2d 421 (1968).

The State argues that Owens' amnesia is a "sham." The State contends that the trial court properly found Owens competent based on the report from the Health Center and the report of the two psychiatrists appointed as a commission to determine competency.

The State relies on the statement Owens made to the Health Center doctors: "[Owens] stated he had an attorney but saw little sense in working with him so as to provide the best possible defense, because he feels he will be found guilty regardless of defense counsel's efforts."

The State also relies on the presentence investigation report. Portions of the report were referred to by Owens' counsel as well as the State during argument on post-trial motions. Owens told the court services officer his version of the events on the night of the crime. There was no mention of amnesia. He stated that Hernandez and Bierman dropped him off at the Woodlands Race Track while they went elsewhere to engage in sexual relations. They returned later with the stolen property. Owens explained that he did not testify at trial because he decided it would be difficult to get a jury to believe his story.

K.S.A. 22-3301(1) states the standard for determining competency to stand trial:

"[A] person is 'incompetent to stand trial' when he is charged with a crime and, because of mental illness or defect is unable:
"(a) To understand the nature and purpose of the proceedings against him; or "(b) to make or assist in making his defense."

K.S.A. 22-3302 provides the procedure the trial court should follow in determining competency.

The determination of competency is made by the trial court after conducting a hearing. K.S.A. 22-3302(1), (3). The statute does not require an adversarial hearing at which the accused may cross-examine the court-appointed physicians. *State v. Costa*, 228 Kan. 308, 317, 613 P.2d 1359 (1980). Absent an abuse of discretion, the trial court's determination of competency will not be reversed on appeal. 228 Kan. at 317.

In the case at bar, the trial court ordered Owens examined by the Health Center at the request of both Owens and the State. The report submitt ed to the court found Owens to be aware of the charges against him and of the gravity of the situation. His comprehension and knowledge of courtroom procedures was sufficient. The report specifically stated that he had the ability, if he desired, to work with his attorney to provide the best possible defense. The report noted Owens' claim of amnesia but found his memory functions intact.

In response to Owens' request for an additional determination of competency, the trial court ordered a second competency evaluation. The two appointed psychiatrists found Owens competent to stand trial.

Owens has shown no abuse of discretion.

The record indicates that Owens' memory was intact at the time of his evaluation by the Health Center and after trial during the presentence investigation. In his motion to dismiss filed on the first day of trial, Owens stated that he was and had been competent to stand trial.

Several witnesses testified that Owens did not consume drugs or alcohol in their presence and that he did not appear to be under the influence of drugs before or after the crimes.

The State's case against Owens was overwhelming. The other two participants testified against him and detailed his involvement. Tambi Lewis, with whom he lived, testified that Owens told her about his involvement. The prosecutor had an "open

file" policy. The evidence, which was made available to Owens prior to trial, sufficiently reconstructed the events during the period of the alleged amnesia.

Under the facts of this case, Owens' alleged amnesia did not prevent him from receiving a fair trial.

### Denial of Psychiatric Treatment

Owens asserts that the trial court erred in refusing to order funds for psychiatric treatment. Owens cites *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985).

The *Ake* test for determining whether expert psychiatric services should be provided is a three-factor test balancing (1) the private interest in the accuracy of the criminal proceeding, (2) the State's interest that will be affected if the psychiatric assistance is provided, and (3) the probable value of the psychiatric assistance sought and the risk of error in the proceedings if the evidence is not offered. 470 U.S. at 77.

In *State v. Dunn*, 243 Kan. 414, 419, 758 P.2d 718 (1988), this court was asked to adopt the balancing test advanced by *Ake*. The court refrained from endorsing the *Ake* balancing test, stating that, before any balancing test is employed, the defendant must first clearly show that his or her mental capacity is a significant issue for a defense to the charges. 243 Kan. at 419-20. Dunn had not made the threshold showing that her mental capacity was a significant issue for a defense to the charges.

K.S.A. 22-4508 provides for authorization of funds for expert services if the judge determines that services are necessary and the defendant is financially unable to obtain them. The authorization of expert services in the criminal trial of an indigent defendant is a matter which lies within the discretion of the trial court. The trial court's decision will not be disturbed unless the defendant shows prejudice to his or her substantial rights resulting from abuse in the exercise of the trial court's discretion. *Dunn*, 243 Kan. at 418; see *State v. Mayberry*, 248 Kan. 369, 807 P.2d 86 (1991).

In the case at bar, Owens has not made the threshold showing that the effect of amnesia upon his mental capacity was a significant issue for a defense to the charges. The references to his amnesia were contained in the report of the Health Center, the affidavit of Dr. Werth, and statements of his counsel. The Health

Center found his memory intact. Portions of the presentence investigation report were referred to by both Owens' counsel and the district attorney in their arguments on Owens' motion for a new trial. The report reflects Owens explained to the court services officer after conviction that his failure to testify was because he was not with anyone at the time of the incident and he decided the the jury would not believe him. No mention was made of amnesia.

Owens has shown no prejudice to his substantial rights resulting from abuse in the exercise of the trial court's discretion.

### Owens' Choice Not to Testify—The Instruction

The trial court followed PIK Crim. 2d 52.13 and gave the following instruction: "You should not consider the fact that defendant, Archie E. Owens, Jr., did not testify in arriving at your verdict."

Owens argues that the instruction is not itself erroneous; however, a defendant has the right to have the jury instructed that it *must* not consider that the defendant did not testify if the defendant so requests.

Owens requested four separate instructions regarding his failure to testify.

At trial, the court provided counsel with proposed instructions. When asked if he had any objections, Owens' counsel stated that he had submitted a list of requested instructions and that he did object generally to the court's proposed instructions.

The trial court then asked for objections to specific instructions. Owens' counsel replied that the instructions given in Kansas are "not chatty enough." Counsel then specifically mentioned that the trial court should define reasonable doubt and felony murder. He stated that he did not mean to preclude the other things laid out in his requested instructions. Owens' counsel went on to discuss the felony-murder instruction in detail. He requested an instruction on voluntary and involuntary manslaughter. Owens' counsel also objected to instruction No. 15 (burden of proof-reasonable doubt). There was no specific objection to instruction No. 22 ("should not consider the fact Owens did not testify").

We have observed: "K.S.A. 22-3414(3) precludes a party from claiming instruction error where there is no contemporaneous

objection, unless the instruction is clearly erroneous." *State v. Cummings*, 242 Kan. 84, Syl. ¶ 6, 744 P.2d 858 (1987).

Although Owens objected to the instructions in general, he did not specifically object to instruction No. 22 and state the grounds for his objection. Our review is limited to whether the instruction is clearly erroneous.

Owens concedes in his brief that the instruction is not clearly erroneous. Although *should* is not as strong as *must*, the jury was instructed not to consider the fact that Owens did not testify. Before the numbered instructions were read, the jury was instructed to consider and follow the instructions. Owens has shown no prejudicial error.

### Instruction—Lesser Included Offense

The trial court has a duty to instruct on all lesser included offenses supported by the evidence. K.S.A. 21-3107(3). *State v. Cummings*, 242 Kan. at 91. The evidence supporting such an instruction must be considered in the light most favorable to the defendant. The test is whether the evidence might reasonably cause a jury to convict the defendant of the lesser charge. 242 Kan. at 91.

Theft of property valued at $500 or more is a felony while theft of property valued less than $500 is a misdemeanor. Misdemeanor theft is a lesser included offense of felony theft. *State v. Parsons*, 11 Kan. App. 2d 220, 220-21, 720 P.2d 671 (1986).

Owens argues that the State did not present sufficient evidence from which the jury could determine the value of the stolen property was $500.

The State advances two counter-arguments. First, the State asserts that Leonard Bierman, the father of the homicide victim (Syndi) and the codefendant (Shari), testified the value of the property was greater than $500. Second, the State asserts that the jury was instructed on misdemeanor theft. The jury filled out a verdict form finding Owens guilty of theft and the value of the property to be $500 or more.

The following property was stolen from the Bierman residence: a computer and printer, a VCR, a beer-sign mirror, a camera, a radio, two watches, a flashlight, several cassette tapes, and $60.

The value to be used in determining whether theft is a felony or misdemeanor is the fair market value of the property. *State v. Robinson,* 4 Kan. App. 2d 428, 431, 608 P.2d 1014 (1980).

Although, there was no evidence supporting an instruction for misdemeanor theft, the jury was given the option to find the value of the property was less than $500. However, it found the value of the property was $500 or more. This finding is supported by the evidence.

The trial court did not err.

Affirmed.