No. 98,133

STATE OF KANSAS, *Appellee,* v. CARL COFIELD, *Appellant.*
(203 P.3d 1261)

Opinion filed March 27, 2009.

*Rachel Pickering,* of Kansas Appellate Defender Office, argued the cause and was on the brief for the appellant.

*Cathy A. Eaton,* assistant district attorney, argued the cause, and *Jerome A. Gorman,* district attorney, and *Stephen N. Six,* attorney general, were with her on the brief for the appellee.

The opinion of the court was delivered by

ROSEN J.: Carl Cofield (defendant-appellant) appeals from his conviction of two counts of first-degree murder and one count of arson. Jurisdiction lies with this court under K.S.A. 22-3601(b)(1).

Around midnight of July 13, 2004, Cofield, Carvelle England, Scott Lindsay, and possibly Derrick Brown left "The Spot," a drug house on 26th Street in Kansas City, Kansas. England and Lindsay were driving a Chrysler, and Cofield was driving a Nissan. There was conflicting evidence as to whether Brown was a passenger in the Nissan. At a stoplight on Quindaro Street, they caught sight of Antonio Moore and Garmario Ross, who were on foot. Numerous shots were fired from the cars, and Moore and Ross died of multiple bullet wounds.

Responding to an emergency call, police found the unarmed lifeless bodies of Moore and Ross and numerous bullet casings and shotgun shells. A search of The Spot produced a number of weapons, including handguns, rifles, and a semiautomatic rifle. A bullet recovered from Moore's body was determined to have been fired by a weapon identified as belonging to Cofield. Police subsequently recovered the burned-out shell of the Chrysler.

On July 23, 2004, the State filed an information charging Cofield with two counts of premeditated first-degree murder. On December 1, 2004, the State filed an amended information charging Cofield with two counts of premeditated first-degree murder and one count of arson. On behalf of the State, Lindsay testified that Cofield stopped his car around 12th Street and Quindaro and began shooting. He then saw one of the victims attempt to run away. Evidence was conflicting as to whether Brown was a passenger in Cofield's car and whether Brown, who died before the trial, fired any shots. The jury found Cofield guilty of both counts of first-degree murder and of arson.

Counsel for Cofield filed a document captioned "Notice of Appeal" on March 8, 2005, but the body of the document requested

a new trial based on insufficient evidence to sustain the murder convictions. On March 29, 2005, the trial court sentenced Cofield to two consecutive hard 25 life terms for the murder convictions and a consecutive term of 12 months for the arson. Notices of appeal in criminal cases filed prior to sentencing are not considered timely. See *State v. Rios,* 19 Kan. App. 2d 350, Syl. ¶ 3, 869 P.2d 755 (1994). On June 21, 2006, counsel filed an untimely amended notice of appeal. The appeal was docketed under case No. 96,321. On June 14, 2006, this court issued an order directing the parties to show cause why the appeal should not be dismissed for lack of appellate jurisdiction. The parties filed responses, and on August 7, 2006, this court dismissed the appeal. Cofield filed a motion to reconsider the dismissal, which this court denied on November 8, 2006. In denying the motion, the court stated that Cofield had leave to request that the district court determine whether any exceptions might apply to preserve his appeal.

On January 3, 2007, new counsel filed a motion in district court asking that the trial court find Cofield's trial counsel ineffective for failing to file a timely notice of appeal. The district court found that trial counsel was ineffective in failing to perfect the appeal in a timely fashion and that fundamental fairness required that Cofield be allowed to file his appeal out of time. Cofield then filed a renewed notice of appeal on the same date as the district court determination of ineffective assistance of trial counsel. Additional facts will be provided as necessary to the analysis of the issues presented. We now address the merits of Cofield's claims.

For his first issue, Cofield maintains the district court erroneously denied his motion to suppress his recorded statements made to police investigating the homicides. When this court reviews a decision regarding suppression of statements to the police, it applies a substantial competent evidence standard to the factual underpinnings of the trial court's decision and applies a de novo standard to the ultimate legal conclusion. We do not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. *State v. Johnson,* 286 Kan. 824, 190 P.3d 207 (2008).

The voluntariness of a confession is determined under the totality of the circumstances. The State has the burden of proving

that a confession is admissible, and it must prove admissibility by a preponderance of the evidence. The essential inquiry is whether the statement was the product of the defendant's free and independent will. *Johnson*, 286 Kan. at 836.

When determining whether a statement was voluntary, the court is to consider numerous factors which have been consolidated into the following nonexclusive list: the defendant's mental condition; the manner and duration of the interrogation; the ability of the defendant to communicate with the outside world; the defendant's age, intellect, and background; the fairness of the officers in conducting the interrogation; and the defendant's proficiency with the English language. *Johnson*, 286 Kan. at 836.

Cofield gave a lengthy recorded statement to the police, in which he admitted to being a primary participant in both the shootings and the burning of the car. Starting around 9 a.m. on the morning of July 22, 2004, Kansas City, Kansas, police began to interrogate Cofield. At around 8 p.m., Captain John Cosgrove and Detectives Terry Mast and Mike Vega video-recorded Cofield's statement.

At a subsequent hearing on Cofield's motion to suppress the statement, the trial court heard the testimony of Captain Cosgrove, Detectives Vega and Mast, and Cofield. The trial court denied the motion to suppress, finding it "clear" that the statement was voluntarily given. The statement was transcribed and is summarized as follows:

In the afternoon of July 13, 2004, England and Cofield gave someone "dope" in exchange for the use of a Chrysler. They drove around for awhile and then returned to the 26th Street house. Cofield left the 26th Street house in a borrowed Nissan, and England and Lindsay left in the borrowed Chrysler. Cofield carried a drum-loaded semi-automatic rifle, England had a .38 caliber pistol, and Lindsay carried a shotgun to the cars for protection.

They drove around for awhile and then drove down Quindaro toward 10th Street. There they saw two men, who took off running until they reached some bushes. Because they were running, Cofield assumed that they were "guilty" of something and were adversaries. Cofield stopped in front of the bushes, and England and Lindsay pulled in behind him. Lindsay opened fire by standing up

in the passenger's seat and shooting out the drop-top of the car. England fired all the bullets from his .38 pistol. England then took the shotgun and continued shooting. Cofield drove forward a short distance, got out of his car, and began shooting at the two youths who had been running. After one of the youths was hit by the shotgun, he flipped onto the ground, then got back to his feet and started running away, and then he fell down again. Cofield then opened fire on him with the semiautomatic. Cofield approached the bushes and shot the other youth who was hiding there.

Cofield then noticed a woman who was sitting nearby and he decided to leave the scene immediately. The three men met back at the 26th Street house. Lindsay reported that he had "flipped" the young man who ran from the bushes.

Cofield left the house with a woman named Veretta Johnson and later went to a convenience store to obtain a calling card to facilitate a drug transaction. The store clerk told Cofield that there were a lot of emergency vehicles on 11th Street, and Cofield decided to drive to the scene. Cofield learned there that one of the shooting victims was Little Tony, with whom Cofield had recently been on good terms. Had he known the victim's identity, Cofield would not have fired on him because "he ain't did nothing to me, he too young for me."

The next morning, Cofield returned to the 26th Street house. Cofield suggested returning the Chrysler to its owner, but England refused and instead called the owner and attempted to convince him that someone had stolen the car and beaten up England. The three men then decided to burn the car. Cofield picked up a can with gasoline and drove the Chrysler to another location, where he met England, who was driving the Nissan. England poured gasoline on the car and attempted to ignite it with a lit piece of paper. When it did not light, Cofield threw the burning paper inside the car. The car blew up, burning Cofield's arm and hair. Cofield obtained medical assistance at the University of Kansas Medical Center.

The statement clearly implicated Cofield as an actual participant in the murders and contradicted his trial testimony that he was only the driver for Brown, who did the shooting. The statement

was certainly incriminating, in that it was not only a confession but also explained contradictions among witnesses at trial. He contends on appeal that he did not give the statement voluntarily because he was deprived of sleep and was subjected to an overly strenuous interrogation, because police threatened him, and because he was under the influence of drugs at the time of the confession.

At trial, however, Cofield testified that he gave the details in his statement because Brown had offered him $1,000 to assume the blame for the shooting. Although he sometimes contended that the police had threatened him, he concluded by testifying that the statement was the product of a $1,000 bribe. He was unable, however, to explain why he waited until the end of nearly a full day of periodic custodial interviews to provide the testimony that would earn him the bribe money.

Keeping in mind that this court will not pass on the credibility of witnesses or resolve conflicts in the evidence when reviewing a trial court's decision to admit a statement, there is no showing that the trial court committed reversible error. Cofield showed no sign of coercion or intoxication when making the statement; in fact, the statement was highly detailed and explicit in sorting out details in response to open-ended questions. There was testimony that he did not appear intoxicated. The interviewing officers testified that they did not threaten Cofield or use physical force against him. They gave him food, cigarettes, and toilet breaks.

No reason appears in the record to reverse the trial court's determination that the statement was voluntary.

For his next three issues, Cofield raises claims regarding errors contained in the instructions to the jury. First, Cofield maintains the district court erroneously instructed the jury regarding responsibility for crimes committed by other people. Cofield did not object to jury instruction 18, relating to aiding and abetting in the commission of a crime by another. Where neither party objected to an instruction, an appellate court reviewing a district court's instruction applies a clearly erroneous standard. *State v. Cooperwood*, 282 Kan. 572, 581, 147 P.3d 125 (2006). Under this standard, the appellate court will reverse only if it is firmly convinced

that, without the alleged error, there was a real possibility the jury would have returned a different verdict. 282 Kan. at 581.

Jury instruction 18 reads:

"A person who, either before or during its commission, intentionally aids, abets, advises, hires, counsels, or procures another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime.

"In addition, a person is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person as a probable consequence of committing or attempting to commit the crime intended.

"All participants in a crime are equally guilty without regard to the extent of their participation. However, mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime is insufficient to establish guilt as an aider or abettor. To be guilty of aiding and abetting in the commission of a crime the defendant must willfully and knowingly associate himself with the unlawful venture and willfully participate in it as he would in something he wishes to bring about or to make succeed."

The instruction combines PIK Crim. 3d 54.06 (Responsibility for Crimes of Another—Crime Not Intended) and PIK Crim. 3d 54.05 (Responsibility for Crimes of Another). In *State v. Engelhardt*, 280 Kan. 113, 133, 119 P.3d 1148 (2005), this court considered this very issue and found the instruction to constitute error. The error lay in instructing the jury on a foreseeability standard from the unintended crime instruction when the crime of conviction—premeditated murder—required intent to commit the crime. The court concluded, however, that the error was harmless because "[t]he overwhelming evidence in this case demonstrated that [the defendant] was guilty of either intentionally murdering the victim or aiding and abetting the intentional murder." 280 Kan. at 133-34. Although the *Engelhardt* decision was issued shortly after the completion of Cofield's trial, its resolution of the issue before us is determinative.

In the present case, the State's theory was based exclusively on premeditation. Here, as in *Engelhardt*, the evidence of guilt of premeditated murder was overwhelming. The large number of shots fired, the fact that Cofield and his cohorts made a point of taking loaded guns with them on the car ride, the vulnerable sit-

uation of the victims, and Cofield's confession that he fired at the victims because he thought they were enemies who were "guilty of something" all provided overwhelming evidence of premeditated murder. It would require a great leap of logic on the part of the jury to have reached a guilty verdict predicated on Cofield intending to aid and abet some crime less than that charged.

Applying the standard of review, it does not appear that there was a real possibility the jury would have returned some other verdict if instructed correctly. As in *Englehardt,* the combination of the two instructions was error; however, the error was harmless.

Next, Cofield claims the district court erroneously instructed the jury regarding the importance of reaching a verdict. Cofield contends on appeal that jury instructions 20 and 21 impermissibly pressured jurors to reach a unanimous verdict. He did not object to the instructions at trial, and the standard of review is the same as with the previous issue—a clearly erroneous standard.

Jury instruction 20 reads:

"This is an important case. Like all cases, it must be decided sometime. Another trial would be a heavy burden on both sides.

"There is no reason to believe that the case can be tried again any better or more exhaustively than it has been. There is no reason to believe that more evidence or clearer evidence would be produced on behalf of either side.

"Also, there is no reason to believe that the case would ever be submitted to 12 people more intelligent or more impartial or more reasonable than you. Any future jury must be selected in the same manner that you were.

"This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision.

"This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. If at all possible, you should resolve any differences and come to a common conclusion so that this case may be completed.

"You may be as leisurely in your deliberations as the occasion may require and take all the time you feel necessary."

Jury instruction 21 reads:

"In order to return a verdict, all jurors must agree upon the verdict. Your deliberations should be conducted in a businesslike manner. You should first se-

lect a presiding juror who should assure that your discussion moves sensibly and orderly with each juror given the opportunity to discuss the issues fully and fairly.

"The attitude and conduct of jurors at the outset of the deliberations are matters of considerable importance. It is rarely helpful for a juror, upon entering the jury room, to make an emphatic expression of their opinion on the case or to announce a determination to stand for a certain verdict. The result of conduct of this nature might be that a juror because of personal pride would hesitate to recede from an announced position when shown that it is erroneous.

"It is natural that differences of opinion will arise. When they do, each juror should not only express their opinions but the reasons upon which they base them.

"Although a juror should not hesitate to change their vote when their reason and judgment are changed, each juror should vote according to their honest judgment, applying the law from the instructions to the facts as proved. If every juror is fair and reasonable, a jury can almost always agree.

"It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you do so without violence to your individual judgment.

"Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions.

"Verdict forms are attached to the last page of these instructions."

Cofield objects specifically to the language in instruction 20 reading: "Like all cases, it must be decided sometime." As he correctly points out, a case does not necessarily have to be decided at some time by a jury.

This court has reviewed this type of instruction when given before deliberations commence and has concluded that the error, if any, is harmless. Most recently, in *State v. Carter*, 284 Kan. 312, 160 P.3d 457 (2007), the court addressed an argument substantially the same as presented in the present case. The court held:

"We have acknowledged that the outdated *Allen*-type instruction 'has been the source of some controversy.' [Citation omitted.] We have disapproved of its use when given after deliberations have begun. [*Citations omitted.*] However, even in those situations, the giving of such an instruction has rarely resulted in a reversal. [Citation omitted.]

"When, as here, the instruction accompanies all of the rest of the instructions given before deliberations begin, this court has concluded there is no error. [Citations omitted.] We will not depart from those holdings in this case. Even if it is not literally inevitable that 'all cases . . . must be decided sometime,' inclusion of the quoted language in this instruction, given before deliberations, does not render it clearly erroneous. *Anthony*, 282 Kan. at 216-17. There is no real possi-

bility that the jury would have returned a different verdict had this instruction not been given." 284 Kan. at 330-31.

Although the statement in instruction 20 that the case would have to be decided by a jury at some time was erroneous, our case law has established that the instruction does not constitute clear error.

Cofield also objects to instruction 21 as being impermissibly coercive. The instruction, patterned on PIK Civ. 3d 101.09, has previously been held not to be unduly coercive. *State v. Hall*, 220 Kan. 712, 718, 556 P.2d 413 (1976); *State v. Cummings*, 242 Kan. 84, 90-91, 744 P.2d 858 (1987). Cofield contends that *Hall* and *Cummings* were decided incorrectly and asks this court to reconsider those decisions.

In *Hall*, the court found that the instruction was not coercive but "a fair statement concerning . . . the proper attitude which the jurors should maintain." 220 Kan. at 718. In *Cummings*, the court found that "[i]n encouraging a unanimous verdict, the instruction does not favor the State over the defendant; the jurors might just as easily reach a unanimous verdict for the defendant." 242 Kan. at 90-91.

In *State v. Whitaker*, 255 Kan. 118, 872 P.2d 278 (1994), the defendant challenged a similar modified *Allen* instruction. The court found the instruction was not clearly erroneous because it did not require jurors to change their votes or to compromise their individual judgments for the sake of reaching an agreement. 255 Kan. at 128.

Although Cofield stresses that a juror might feel coerced into going along with the majority in order to reach a unanimous verdict, the language of the instruction as a whole mitigates against such coercion, expressly directing jurors to vote according to their honest judgment. This instruction was presented prior to deliberation, and there was no indication that the jury was close to being deadlocked. As this court noted in *State v. Struzik*, 269 Kan. 95, 109, 5 P.3d 502 (2000), "[o]ne of the primary concerns with an *Allen*-type instruction has always been its timing. When the instruction is given before jury deliberations, some of the questions as to its coercive effect are removed."

The previous rulings of this court have determined that neither instruction, when given prior to deliberations, constitutes error. The reasoning has been that unanimity does not favor either party and that, in the absence of a deadlock or a potential deadlock, the instructions lack an "explosive" effect on jurors to move them from a set position. See *Whitaker*, 255 Kan. at 126.

Cofield maintains, however, that, even if the two instructions separately did not constitute clear error, their cumulative effect was coercive. He contends there was a real possibility that the jury might have reached a different verdict if it had not been urged to try to reach unanimity. He in essence argues for a cumulative non-error approach: although this court has found both instructions not to constitute error, together they constitute not only error but clear error.

This argument is not persuasive. The instructions misinformed the jury only as to the necessity of an eventual jury verdict. The remainder of the instructions was accurate, if perhaps unnecessary. Although some discrepancies in the testimony existed, the evidence, in particular Cofield's statement to police, provided overwhelming evidence of guilt. The instructions, even taken together, do not constitute clear error.

For his third claim of instructional error, Cofield maintains that the district court erroneously instructed the jury regarding burden of proof, presumption of innocence, and reasonable doubt. Cofield contends that jury instruction 8 improperly modified the presumption of innocence. He did not object to the instruction, and as noted in the discussion of the previous two issues, the issue is subject to a standard of clear error.

Instruction 8 reads:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty until you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant guilty."

Cofield contends that the use of the word "until" in the second sentence suggested to the jury that it ultimately was supposed to be convinced of his guilt. This court has recently found that the wording of the instruction, while not ideal, is not erroneous. *State v. Gallegos*, 286 Kan. 869, 877, 190 P.3d 226 (2008). Citing *State v. Wilkerson*, 278 Kan. 147, 158, 91 P.3d 1181 (2004), the court held:

"[T]he instructions . . . when taken as a whole, accurately state the law. The burden-of-proof instruction, when read in its totality, correctly describes the standard that the jury was required to apply in finding [the defendant] guilty or not guilty of the crimes charged. The jury could not reasonably have been misled by the use of the term 'until' in light of the accompanying instructions." *Gallegos*, 286 Kan. at 877.

Cofield does not present a compelling reason to depart from the recent decisions of this court. As with the other claimed instructional errors, the language contained in instruction 8 does not constitute clear error.

As his final issue, Cofield claims the cumulative effect of multiple trial errors caused substantial prejudice and denied him a fair trial. Cumulative trial errors, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found under the cumulative error rule if the evidence is overwhelming against a defendant. *State v. Nguyen*, 285 Kan. 418, 437, 172 P.3d 1165 (2007).

Cumulative error will not be found when the record fails to support the errors raised on appeal by the defendant. *State v. Davis*, 283 Kan. 569, 583, 158 P.3d 317 (2007); *State v. Jones*, 283 Kan. 186, 218, 151 P.3d 22 (2007). One error is insufficient to support reversal under the cumulative effect rule. *Nguyen*, 285 Kan. at 437.

There were no errors of any substance that occurred in the course of the trial, and therefore the errors did not accumulate to create substantial prejudice denying Cofield a fair trial.

Affirmed.