NOT DESIGNATED FOR PUBLICATION

No. 119,762

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EDWARD WILLIAM KARAFELIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Atchison District Court; ROBERT J. BEDNAR, judge. Opinion filed June 28, 2019. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Sherri L. Becker*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN and POWELL, JJ.

PER CURIAM: Following a jury trial, Edward Karafelis was convicted of felony theft of property with a value of at least $1,500 but less than $25,000. On appeal, Karafelis argues that the evidence presented at trial failed to prove that the value of the stolen batteries was $1,500 or greater and that the State did not produce any evidence about the fair market value of the stolen batteries. We conclude that when viewed in the light most favorable to the State, a rational fact-finder could have found that sufficient evidence existed that the value of the stolen batteries was at least $1,500 but less than $25,000. Accordingly, we affirm.

1

James Tull owned a company that performed excavation, demolition, and paving services. Tull owned large pieces of equipment for this business including an excavator, backhoe, grader, end loader, trucks, and demolition and paving equipment. Tull had hired Karafelis as an employee, and Tull gave Karafelis keys and permission to access Tull's property through his employment.

In 2017, Tull found around 16 to 18 batteries had been cut, removed, and stolen from various pieces of his equipment. There is a discrepancy on appeal about how many batteries were taken. The State claims 18 batteries were taken, and Karafelis claims 16 batteries were taken. Regardless, Tull told police officers that 16 batteries were stolen. Detective Larry Myer from the Atchison County Sheriff's Office counted 16 stolen batteries, and the complaint charged Karafelis with the theft of 16 batteries. Karafelis admitted to Myer that he had stolen 9 to 12 of the batteries. Karafelis also admitted to selling the batteries for scrap. The State presented evidence at trial that proved the scrap company paid Karafelis $423.04 for the batteries he sold for scrap.

At trial, Tull testified that batteries for heavy equipment are larger, heavier, and more expensive than a standard car battery. Each piece of equipment requires two batteries to operate. Tull testified that eight of the batteries were less than one-year old and that all the batteries were in good, working condition. Tull also testified that the batteries cost, on average, $160 per battery, except for the batteries to the loader which cost $200 per battery. To replace the batteries, Tull testified that he paid "pretty close to $1,600" for only the cost of the batteries.

The jury was given an instruction specifically about the valuation of the batteries. The instruction stated:

"The State has the burden of proof as to the value of the property which the defendant allegedly obtained unauthorized control.

"The State claims the value of the property was at least $1500.00 but less than $25,000.00.

"It is for you to determine the amount and enter it on the verdict form furnished."

The jury deliberated and later presented three questions for the district court, all related to determining the value of the stolen batteries. First, the jury asked, "Are we considering labor and restoration in the overall cost?" Second, "Are we considering the cost of damaged cables?" Third, "Are we considering damages to the property or only to the value of what was taken from the property?" Upon agreement from the parties, the district court answered the first two questions as "not applicable" and answered question three as "only the value of the property taken is considered."

The jury found Karafelis guilty of theft with the value of the property at least $1,500 but less than $25,000. Karafelis filed this timely appeal.

*Was There Sufficient Evidence Presented at Trial for the Jury to Find Karafelis Guilty of Felony Theft?*

On appeal, Karafelis argues that the evidence presented at trial failed to prove that the value of the batteries taken was over $1,500. Karafelis argues the State did not produce any evidence regarding the fair market value of the batteries stolen. The State argues the jury heard sufficient testimony on the value of the batteries mainly through the testimony of the victim, Tull.

The standard of review of sufficiency of the evidence is well settled:

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most

3

favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

It is only in rare cases when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

> *There was sufficient evidence for the jury to determine the value of the stolen batteries was at least $1,500.*

Kansas courts have held that the value of property is determined at the fair market value of the items taken at the time of the theft. *State v. Owens*, 248 Kan. 273, 285, 807 P.2d 101 (1991). An owner of stolen property is presumed to know its value and, therefore, can give competent evidence as to its value. *State v. Moss*, 221 Kan. 47, 49, 557 P.2d 1292 (1976).

Karafelis argues that the State did not produce any evidence that would determine the fair market value of the batteries. Karafelis claims the only evidence that could be considered fair market value is the amount of money Karafelis received for selling the batteries to the scrap company—$423.04. Karafelis argues that the "only other evidence on this point by the State was the cost paid by Tull to buy replacement batteries." Karafelis does not refer to any dollar amount or record citation for this assertion.

This argument is not persuasive. Melanie Callen, the office manager of the scrap company, provided testimony that the scrap value of any item is typically much less than the actual value. Thus, the jury heard testimony that the scrap value is not the fair market value.

4

The State also presented testimony by Tull that the batteries were more expensive than a standard car battery and it would cost around $160 to replace each one. Kansas courts have found that as the owner of the property, Tull is presumed to know the value of his own property and, therefore, Tull can give competent evidence as to the value of the stolen batteries. *Moss*, 221 Kan. at 49. This assumption was also satisfied when Tull testified that the batteries for the end loader cost more than the other batteries—costing $200 per battery rather than $160 per battery.

Based on the testimony of Tull, the State presented the jury with multiple figures for determining whether the value of the stolen batteries was at least $1,500. The record also provides that the jury thought extensively about this question when they asked the court three questions related to determining the value. While the jury never heard testimony specifically about the fair market value of each individual battery, it heard testimony that nine of the batteries were less than one-year old and that all the batteries were in good condition.

Presumably, the jury could have determined that at $160 per battery, the value of the 16 batteries would be $2,560. If the jury considered the two batteries for the end loader costing $200 per battery, then it could have determined the value to be $2,640, which is in excess of $1,000 more than the minimum required of $1,500. The State also presented more evidence supporting the conviction when Tull testified that he thought he paid $1,600 to replace all the batteries that were stolen.

The State thus presented the jury with evidence that at a minimum, the value of the batteries was $1,600. The State also presented evidence that the value of the batteries could be up to $2,640. And there was testimony that the scrap value of the batteries is much less than the actual value.

Karafelis makes another argument related to the amount of restitution awarded. The court ordered Karafelis to pay $1,500 in restitution. Karafelis argues: "The restitution amount in this case was $1,500.00 for the cost of *new replacement batteries*. Therefore, the fair market value for the batteries actually taken must have been less than $1,500.00 because *the batteries that were actually stolen were not new*."

This argument is not persuasive and is irrelevant. The jury did not have this restitution determination when it was considering whether the value of the stolen batteries was at least $1,500. The jury could not have considered the restitution amount as part of the sufficient evidence of value of the batteries because the amount had not yet been decided. Nor is there any evidence in the record that the $1,500 award was the actual cost of replacing the batteries. According to the transcript from the sentencing proceedings, the parties agreed upon the $1,500 figure and no evidence supports Karafelis' position that this should be determinative of the actual value of the stolen batteries.

When viewed in the light most favorable to the State, a rational fact-finder could have found that there was sufficient evidence that the value of the stolen batteries was at least $1,500 but less than $25,000. Thus, we conclude that Karafelis is guilty of felony theft beyond a reasonable doubt.

Affirmed.