No. 112,003

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER J. KIMBERLIN,
*Appellant*.

SYLLABUS BY THE COURT

1.

Interpretation of a sentencing statute is a question of law over which an appellate court has unlimited review.

2.

In multiple conviction cases where all the sentences are imposed using the drug grid or where all the sentences are imposed using the nondrug grid, K.S.A. 2014 Supp. 21-6819(b)(2) requires the sentencing judge to designate the crime with the highest crime severity ranking as the primary crime.

3.

In multiple conviction cases that require sentencing under both the drug grid and the nondrug grid and simultaneously having a presumption of imprisonment and probation, K.S.A. 2014 Supp. 21-6819(b)(2) requires the sentencing judge to use the crime which presumes imprisonment as the primary crime.

1

4.

In multiple conviction cases that require sentencing with both the drug grid and the nondrug grid and simultaneously having a presumption of either both probation or both imprisonment, K.S.A. 2014 Supp. 21-6819(b)(2) requires the sentencing judge shall use the crime with the longest sentence term as the primary crime.

5.

A special rule in K.S.A. 2014 Supp. 21-6805(f)(1) requires the sentencing court to impose a sentence of prison when the defendant is convicted of a third or subsequent felony for possession of a controlled substance or controlled substance analog.

6.

In multiple conviction cases, the sentencing court first must apply the special rule in K.S.A. 2014 Supp. 21-6805(f)(1) to any third or subsequent conviction for possession of a controlled substance before designating the primary crime to be used in calculating the base and nonbase sentences under K.S.A. 2014 Supp. 21-6819(b)(2).

7.

A sentence is effective when pronounced from the bench; a sentence in a criminal case does not derive its effectiveness from the journal entry. A journal entry that imposes a sentence at variance with the sentence pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed.

8.

The rules governing appellate review of a prosecutorial misconduct claim are discussed and applied.

9.

The rules governing appellate review of a jury instruction to which the defendant objected at trial are discussed and applied.

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed November 6, 2015. Affirmed in part, vacated in part, and remanded with directions

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Sarah E. Washburn*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., STANDRIDGE, J., and BURGESS, S.J.

STANDRIDGE, J.:  Christopher J. Kimberlin appeals following his convictions of aggravated battery and various drug crimes. Stated generally, Kimberlin challenges the manner in which his felony sentences were calculated, the accuracy of the court's journal entry, the propriety of a comment made by the prosecutor in closing argument, one of the instructions given to the jury, and the use of his criminal history to calculate his sentence. For the reasons stated below, we agree that Kimberlin's felony sentences were improperly calculated and therefore must be vacated and remanded for resentencing. We also agree that the journal entry is inaccurate because it fails to reflect the sentence announced at the sentencing hearing. Nevertheless, we find no merit in Kimberlin's claims of prosecutorial misconduct, erroneous jury instructions, and use of criminal history in sentencing.

FACTS

On the evening of March 23, 2013, Emporia Police Officer John Jeffery was dispatched to a residence for a possible domestic battery. Upon arrival, Jeffery met with Misti Tucker, who was standing outside and crying. Tucker lived at the residence with

Kimberlin, her boyfriend. Tucker reported that Kimberlin had dragged her across the floor by her throat and choked her from behind. Jeffery observed faint red marks on Tucker's neck that he later identified as consistent with strangulation. Tucker also advised that there were illegal drugs belonging to Kimberlin inside the residence. She gave Jeffery permission to enter, but the door was locked, and Tucker, who had left in a rush, had no way to let Jeffery inside. As a result, Jeffery obtained a search warrant for the residence; a subsequent search revealed drugs and numerous items of drug paraphernalia.

The State charged Kimberlin with one count each of aggravated battery, possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, possession of Psilocyn, and possession of Alprazolam.

At trial, Tucker testified that she and Kimberlin had both been drinking on the day in question and that Kimberlin had also used methamphetamine. She stated that they argued off and on all day before the argument escalated into physical violence later that evening. Tucker claimed that Kimberlin had hit, pushed, and choked her to a point where she could not breathe. Tucker also claimed that Kimberlin took her phone and broke her glasses. According to Tucker, Kimberlin was very controlling and often reminded her that everything in the house belonged to him and that she could only use things in the house when he gave her permission to do so.

Kimberlin's version of events differed from Tucker's. Kimberlin testified that after waking from a nap on March 23, he found some drug paraphernalia in the house. Kimberlin claimed he told Tucker that she needed to get her things and leave because he did not allow drugs in his house. He denied touching, harming, or threatening Tucker, other than telling her that she needed to leave. Kimberlin stated that Tucker was upset because she did not have anywhere else to go. Kimberlin testified that he called his friend, Tom Noyce, to pick him up. As he was leaving, Kimberlin claimed that Tucker stated, "'You're going to jail.'" According to Kimberlin, he and Noyce went to the grocery

4

store and then spent the night at Noyce's house. Kimberlin testified that he did not return home or have any further contact with Tucker that night. Kimberlin claimed that Tucker had full access to everything in the house, denied knowledge of any of the drugs or drug paraphernalia collected by the police, and maintained that the items did not belong to him.

Noyce testified that Kimberlin called him for a ride and was mad because he found drug paraphernalia in the house. Noyce stated that after he and Kimberlin went to the grocery store, they went to his house and stayed there the rest of the night. As far as Noyce knew, Kimberlin did not leave until the next day.

The district court granted Kimberlin's motion for judgment of acquittal for the possession of Alprazolam charge. The jury convicted Kimberlin on all remaining charges. The district court sentenced him to a controlling term of 42 months' imprisonment. Kimberlin timely appeals.

ANALYSIS

Kimberlin raises the following issues on appeal: (1) the district court erroneously calculated his felony sentences, (2) the journal entry of judgment does not accurately reflect the misdemeanor sentences pronounced by the district court, (3) the prosecutor's comments during closing argument deprived him of his constitutional right to a fair trial, (4) the district court erred in giving the jury a deadlocked jury instruction, and (5) the district court improperly enhanced his sentence based on his criminal history. Each of these allegations is addressed in turn.

*Sentencing*

Kimberlin argues the district court erred in calculating his felony sentences. Specifically, Kimberlin contends the district court erroneously designated aggravated battery as the primary crime when the court sentenced him. In the alternative, Kimberlin alleges the court erred by imposing a prison sentence for his aggravated battery conviction instead of imposing the presumptive sentence of probation.

Resolving the issue presented by Kimberlin requires interpretation of the relevant provisions of the Kansas Sentencing Guidelines Act. Interpretation of a sentencing statute is a question of law over which an appellate court has unlimited review. See *State v. Phillips*, 299 Kan. 479, 494, 325 P.3d 1095 (2014).

K.S.A. 2014 Supp. 21-6819(b)(2), which governs sentencing in multiple conviction cases, states that the sentencing judge "shall establish a base sentence for the primary crime." The primary crime is generally the one with the highest crime severity ranking. But in cases like Kimberlin's, which involve both the drug grid and the nondrug grid, this particular subsection of the statute goes on to provide:

> "In the instance of sentencing with both the drug grid and the nondrug grid and simultaneously having a presumption of imprisonment and probation, the sentencing judge shall use the crime which presumes imprisonment as the primary crime. In the instance of sentencing with both the drug grid and the nondrug grid and simultaneously having a presumption of either both probation or both imprisonment, the sentencing judge shall use the crime with the longest sentence term as the primary crime." K.S.A. 2014 Supp. 21-6819(b)(2).

The base sentence is set using the total criminal history score assigned. K.S.A. 2014 Supp. 21-6819(b)(3). All remaining crimes are nonbase sentences calculated in the

6

criminal history category I column of the sentencing grid. K.S.A. 2014 Supp. 21-6819(b)(5).

The jury in this case convicted Kimberlin of the following felony charges:

- Count 1, aggravated battery, a severity level 7 person felony;
- Count 2, possession of methamphetamine, a severity level 5 drug felony; and
- Count 4, possession of marijuana, a severity level 5 drug felony.

Kimberlin's criminal history score was established, without objection, as E. As a result, the presumptive sentence on the applicable sentencing grid for all three of these felony offenses was probation. See K.S.A. 2014 Supp. 21-6804 and 21-6805. Because Counts 2 and 4 involved Kimberlin's third or subsequent felony drug possession conviction, however, a special rule set forth in K.S.A. 2014 Supp. 21-6805(f)(1) mandated a presumptive prison sentence for these two particular offenses.

The presentence investigation (PSI) report listed aggravated battery as the primary crime. Despite the fact that the applicable grid box in the sentencing guidelines indicated that the presumptive sentence for aggravated battery was probation, the PSI report prepared for the court designated the offense of aggravated battery as presumptive prison due to the special rule set forth in K.S.A. 2014 Supp. 21-6805(f)(1). The PSI report also designated the drug possession offenses in Counts 2 and 4 to be presumptive prison sentences pursuant to the special rule in K.S.A. 2014 Supp. 21-6805(f)(1). Finally, the PSI report indicated that Kimberlin was not eligible for drug treatment as set forth in that statute.

Prior to sentencing, Kimberlin filed a motion for departure, requesting both a dispositional departure to probation as well as a durational departure. At the sentencing

7

hearing, the prosecutor expressed confusion as to why the PSI report listed aggravated battery as a presumptive prison offense when the special rule in K.S.A. 2014 Supp. 21-6805(f)(1) applied only to Kimberlin's felony drug possession convictions. The State ultimately deferred to the district court on the issue. Thereafter, the district court denied Kimberlin's departure motion and imposed consecutive prison sentences for each of the three felony convictions. In doing so, the court designated Count 1, aggravated battery, as the primary crime and imposed a 21-month prison sentence. Next, the court sentenced Kimberlin to 11-month prison terms on Counts 2 and 4. The court noted the applicability of the special rule requiring a prison sentence be imposed on Kimberlin's felony drug convictions but stated that the rule "does not necessarily apply to Count No. 1." All told, Kimberlin received a 42-month prison sentence, decreased from 43 months pursuant to the "double rule" set forth in K.S.A. 2014 Supp. 21-6819(b)(4).

Kimberlin first argues the district court erred in designating aggravated battery as the primary crime. In support of this argument, Kimberlin relies on K.S.A. 2014 Supp. 21-6819(b)(2), which provides in relevant part that, when a sentence makes use of both the drug grid and the nondrug grid with simultaneous presumptions of imprisonment and probation, the sentencing judge must designate as the primary offense the crime presuming imprisonment. Noting that the presumptive sentence for aggravated battery was probation, Kimberlin claims either Count 2 or 4, both of which were presumptive imprisonment crimes pursuant to the special rule in K.S.A. 2014 Supp. 21-6805(f)(1), should have been designated the primary crime.

Preliminarily, the State argues that not only did Kimberlin fail to raise this issue below, but defense counsel actually asked the court at the sentencing hearing to designate aggravated battery as the primary crime. Generally, a litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Nevertheless, Kimberlin argues that we may consider this issue for the first time on appeal because the sentence fails to comply with K.S.A. 2014 Supp. 21-6819, thereby

8

rendering it illegal. See *State v. Jones*, 279 Kan. 809, 810, 112 P.3d 123 (2005) (defining an illegal sentence in part as "one that does not conform to the statutory provisions, either in the character or the term of the punishment authorized"). Kansas law clearly provides that a defendant cannot agree to an illegal sentence. *State v. Weber*, 297 Kan. 805, 815, 304 P.3d 1262 (2013). In fact, K.S.A. 22-3504(1) specifically authorizes a court to "correct an illegal sentence at any time." "This language has generally been interpreted to mean that 'an illegal sentence issue may be considered for the first time on appeal.' [Citation omitted.]" *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015). Therefore, we may reach the merits of Kimberlin's argument.

In response to the merits of Kimberlin's argument, the State alleges the district court properly designated aggravated battery as the primary crime pursuant to the last sentence of K.S.A. 2014 Supp. 21-6819(b)(2), which provides: "In the instance of sentencing with both the drug grid and the nondrug grid and simultaneously having a presumption of either both probation or both imprisonment, the sentencing judge shall use the crime with the longest sentence term as the primary crime." According to the State, this portion of the statute is applicable because (1) prior to application of the special rule set forth in K.S.A. 2014 Supp. 21-6805(f)(1), the presumptive sentence for all three of Kimberlin's felony convictions was probation according to their respective sentencing grids and (2) aggravated battery had a longer sentence term than the drug crimes. For the reasons stated below, however, we are not persuaded that the statutory language quoted by the State is applicable to the facts presented here.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Brooks*, 298 Kan. 672, 685, 317 P.3d 54 (2014). Kimberlin's criminal history score was

9

E. He was convicted in Count 1 of aggravated battery, a severity level 7 felony. The presumed nondrug guidelines sentence for Count 1 was probation, with a sentencing range of 19-21-23 months. See K.S.A. 2014 Supp. 21-6804. Kimberlin's felony drug possession convictions in Counts 2 and 4 were both severity level 5 felonies. With a criminal history score of E, the presumed drug guidelines sentence for each count was probation, with a sentencing range of 18-20-22 months. See K.S.A. 2014 Supp. 21-6805.

Because Counts 2 and 4 involved Kimberlin's third or subsequent felony drug possession convictions, however, application of the special rule set forth in K.S.A. 2014 Supp. 21-6805(f)(1) was triggered. This special rule provides that the presumptive sentence for a third or subsequent felony drug possession conviction is prison. The sixth sentence of K.S.A. 2014 Supp. 21-6819(b)(2) states that "[i]n the instance of sentencing with both the drug grid and the nondrug grid and simultaneously having a presumption of imprisonment and probation, the sentencing judge shall use the crime which presumes imprisonment as the primary crime." In this case, Kimberlin was convicted of a nondrug crime that had a presumptive probation sentence and two drug crimes that had presumptive imprisonment sentences. The fact that Counts 2 and 4 are listed on the drug grid as presumptive probation sentences when the special rule in K.S.A. 2014 Supp. 21-6805(f)(1) does not apply is irrelevant to the facts presented here.

For the reasons stated above, we conclude the district court erred in designating aggravated battery, which had a presumptive sentence of probation, as the primary crime. As a result, Kimberlin's felony sentences must be vacated and remanded for resentencing. Given our conclusion in this regard, we find it unnecessary to address Kimberlin's alternative argument that the district court erred in imposing a prison sentence for his aggravated battery conviction.

10

*Journal entry*

Kimberlin argues the journal entry of judgment must be corrected because it erroneously reflects that the district court ordered his misdemeanor sentences to run consecutively, rather than concurrently. The State concedes this error.

Kimberlin correctly notes that the district court stated at the sentencing hearing that his 12-month jail sentences in Counts 7 and 9 were to run concurrently. The journal entry of judgment also indicates, under the section specific to each count, that Kimberlin received a 12-month jail sentence on each count, to run concurrently with all other charges. But the "Recap of Sentence" section of the journal entry reflects that Kimberlin received a 24-month jail sentence as a result of his two misdemeanor convictions.

A sentence is effective when pronounced from the bench; a sentence in a criminal case does not derive its effectiveness from the journal entry. A journal entry that imposes a sentence at variance with the sentence pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed. *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012). Accordingly, the journal entry of judgment must be corrected upon resentencing so that it reflects the actual misdemeanor sentence pronounced from the bench.

*Prosecutorial misconduct*

Kimberlin argues that the prosecutor engaged in misconduct by making a comment during closing argument that improperly appealed to the jurors' sympathies.

Appellate review of a prosecutorial misconduct claim based on improper comments requires a two-step analysis. First, an appellate court decides whether the comments at issue were outside the wide latitude a prosecutor is allowed, *e.g.*, when

11

discussing evidence. If so, there was misconduct. If misconduct is found, the second step requires the appellate court to determine whether the improper comments prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Bridges*, 297 Kan. 989, 1012, 306 P.3d 244 (2013).

Appellate courts consider three factors in analyzing the second step:  (1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the jurors' minds. But none of these factors individually controls; and before the third factor can override the first two, an appellate court must be able to say the harmlessness tests of both K.S.A. 2014 Supp. 60-261 and *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), have been met. *State v. McCullough*, 293 Kan. 970, 990, 270 P.3d 1142 (2012).

During closing arguments, the prosecutor stated, "Mr. Kimberlin controlled that house. And I ask you to not let him get away with controlling Ms. Tucker through your verdict." Kimberlin argues that this particular comment wrongly asked the jury to consider factors outside of his guilt when deliberating the charges against him by making the jury feel a sense of responsibility to protect Tucker from any further victimization by him. Conversely, the State asserts that the statement was a legitimate comment on the evidence presented at trial relating to Kimberlin's ongoing assertion of control.

In the interest of judicial economy, we will assume—without deciding—that the prosecutor's statement requesting the jury not allow Kimberlin to "get away with controlling" Tucker was an impermissible attempt to engender sympathy towards Tucker that diverted attention from the jury's function of determining guilt based on the evidence. Because we are assuming the statement was outside the wide latitude a prosecutor is allowed, the question presented is whether the statement made by the

12

prosecutor requires reversal, *i.e.*, "whether the improper comments prejudiced the jury and denied the defendant a fair trial." *Bridges*, 297 Kan. at 1012. In order to make that decision, we must determine whether the misconduct was gross and flagrant, whether it was motivated by ill will, and whether the evidence was so overwhelming that the improper comment would have little weight in the jurors' minds. 297 Kan. at 1012.

As to whether the prosecutor's statement was gross and flagrant, we consider whether the comment ultimately deprived defendant of a fair trial, whether the comment was repeated or emphasized, and whether the comment violated a long-standing or clear and unequivocal rule designed to protect a constitutional right. *State v. Marshall*, 294 Kan. 850, Syl. ¶ 6, 281 P.3d 1112 (2012). In this case, the prosecutor's comment was brief and not repeated. And we find nothing in the record from which to conclude that the prosecutor deliberately made the comment knowing it was improper or that the prosecutor violated a clear and unequivocal rule designed to protect a constitutional right.

As to whether the comment was motivated by ill will, we consider whether the misconduct was deliberate, repeated, or in an apparent indifference to a court ruling. See *Bridges*, 297 Kan. at 1016. We have reviewed the record and find no evidence that the statement made by the prosecutor was motivated by ill will. More specifically, there was only one instance of misconduct; the prosecutor did not persist with the statement or show indifference to a court admonishment to cease; and there was no suggestion that the prosecutor mocked Kimberlin in making the statement.

We finally consider whether the evidence was so direct and overwhelming that the improper comment would have had little weight in the jurors' minds. The State bears the burden of demonstrating harmless error. *State v. Akins*, 298 Kan. 592, 612, 315 P.3d 868 (2014). To satisfy its burden, the State must convince the court, beyond a reasonable doubt, that there is no reasonable possibility the misconduct affected the jury's verdict. To meet this burden, the State argues that the evidence against Kimberlin was significant.

13

Although the evidence in this case hinged entirely on the credibility of Tucker's testimony, her testimony constitutes direct evidence supporting the jury's guilty verdicts. Considering the lack of prosecutorial ill will and the fleeting nature of the comment, we conclude the State has satisfied its burden to demonstrate that there is no reasonable possibility the misconduct affected the trial's outcome in light of the entire record.

*Jury instruction*

Kimberlin argues the district court erred in giving the jury a deadlocked instruction, along with the other instructions, before jury deliberations began. Specifically, he claims that the instruction was misleading and impermissibly allowed the jury to consider what might happen to the case after trial.

When analyzing jury instruction issues, an appellate court follows a three-step process:

> "(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless." *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012).

Kimberlin objected to the instruction at issue here. Consequently, we will reverse if we find an error and conclude that there is a "reasonable probability" that the error affected the outcome of the trial in light of the entire record. *State v. Ward*, 292 Kan. 541, 565, 569, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

Prior to the instructions conference, the district court asked the jurors whether they would be willing to stay and deliberate later that evening in light of the potential for bad weather. The jurors indicated their agreement to do so. At the instructions conference, the

14

district court proposed the following instruction, which is identical to PIK Crim. 4th 68.140 (2013 Supp.):

> "Like all cases, this is an important case. If you fail to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being. It is then up to the state to decide whether to resubmit the undecided charge(s) to a different jury at a later time.
>
> "This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision.
>
> "This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. You should treat the matter seriously and keep an open mind. If at all possible, you should resolve any differences and come to a common conclusion.
>
> "You may be as leisurely in your deliberations as the occasion may require and take all the time you feel necessary."

Defense counsel expressed reservations about providing this instruction to the jury. In response, the prosecutor noted that due to the potential for bad weather, it was important to let the jurors know that they could take all the time they needed in order to reach a decision. In agreeing with the State, the district court judge stated,

> "I'm particularly mindful that at this point in time we do not necessarily want to rush the jury simply because we're working to try and beat the weather, so I'm going to keep that instruction in place, noting the defendant's reservation and I think I'll just call it an objection to it and make it a continuing objection."

It is possible that a deadlocked jury instruction—commonly known as an *Allen*-type instruction—given during jury deliberations "could be coercive or exert undue pressure on the jury to reach a verdict." *State v. Struzik*, 269 Kan. 95, 103, 109, 5 P.3d 502 (2000) (citing *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528

15

[1896]). In 2009, the Kansas Supreme Court disapproved the phrase "[a]nother trial would be a burden on both sides," which formerly appeared in the PIK instruction on jury deadlock. See *State v. Salts*, 288 Kan. 263, 264, 200 P.3d 464 (2009). More specifically, the *Salts* court held that the phrase was (1) misleading because it was inaccurate in that another trial may not always be a burden to both sides and (2) confusing because the jurors were also told in another instruction not to concern themselves with what happens to the case after their obligation as jurors had ended. 288 Kan. at 266. After *Salts*, the PIK Committee removed the phrase from the instruction. *State v. Wilson*, 45 Kan. App. 2d 282, 286, 246 P.3d 1008, *rev. denied* 292 Kan. 969 (2011); see PIK Crim. 4th 68.140.

Here, the district court instructed the jury using the post-*Salts* version of PIK Crim. 4th 68.140, which makes no reference to the burden of another trial. This court has deemed the instruction an accurate statement of the law. See *Wilson*, 45 Kan. App. 2d at 284-88 (holding that the instruction accurately states what will happen if the jury does not reach a verdict); *State v. Davis*, No. 104,258, 2011 WL 6413624, at *4-5 (Kan. App. 2011) (unpublished opinion), *rev. denied* 296 Kan. 1132 (2013) (same); *State v. Alvarado*, No. 104,507, 2011 WL 3250585, at *3-5 (Kan. App. 2011) (unpublished opinion), *rev. denied* 296 Kan. 1131 (2013) (same). Moreover, there is no evidence to suggest the jury was having trouble reaching a verdict; rather, the district court gave the instruction before the jury began to deliberate due to concern about the weather and to encourage jurors to take the time they needed to make a decision in the case. Giving the instruction to the jury prior to deliberations is consistent with the recommendation set forth in the Notes on Use following the instruction. See PIK Crim. 4th 68.140.

Nevertheless, Kimberlin argues that PIK Crim. 4th 68.140 continues to be defective based on the last sentence of the first paragraph, which advises the jury that if it fails to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being and "[i]t is then up to the state to decide whether to resubmit the undecided charge(s) to a different jury at a later time." Specifically, Kimberlin

16

contends this language is confusing because it conflicts with the following instruction, which also was given to the jury prior to deliberations: "Your only concern in this case is determining if the defendant is guilty or not guilty. The disposition of the case thereafter is a matter for determination by the Court." Kimberlin alleges that this instruction, when coupled with the deadlocked jury instruction, caused confusion. More specifically, Kimberlin claims the instructions taken together admonished the jury not to consider what happens after the verdict, but then told the jurors what would happen in the event they could not reach a decision. Kimberlin acknowledges that our Supreme Court already has found these instructions did not warrant reversal in *State v. Cofield*, 288 Kan. 367, 374-77, 203 P.3d 1261 (2009). But Kimberlin points out the court in *Cofield* did not discuss the opinion in *Salts*; thus, the holding is limited to deciding only that the deadlocked jury instruction was not coercive but does not address his contention that the instructions contradict one another.

But in *Wilson*, this court addressed an argument similar to Kimberlin's—that instructing a jury to concern itself with only guilt or innocence conflicts with language in an *Allen*-type instruction—and found no conflict. 45 Kan. App. 2d at 286-88. Kimberlin asserts that *Wilson* was wrongly decided and maintains that the instructions are conflicting and confusing.

Contrary to Kimberlin's argument, however, we find the reasoning set forth by the court in *Wilson* to be sound and readily applicable to the present case. The two instructions were not conflicting in that they both accurately instructed the jury that its primary concern was to determine guilt or innocence and neither one of the instructions asked the jury to consider whether the case should be retried if it failed to reach a verdict. Therefore, the district court did not err in giving the deadlocked jury instruction. Because there was no error, we need not reach the final step of the analysis, *i.e.*, whether there is a "reasonable probability" that the error affected the outcome of the trial in light of the entire record. See *Ward*, 292 Kan. at 565, 569.

17

*Criminal history*

Kimberlin argues the district court violated his constitutional rights when it used his criminal history information to increase his sentence without proving his criminal history to a jury beyond a reasonable doubt, citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Kimberlin acknowledges that the Kansas Supreme Court ruled against his position in *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002), but includes the argument to preserve it for federal review. The Supreme Court has shown no indication that it is departing from its previous position and has, in fact, consistently reaffirmed *Ivory*. See, *e.g.*, *State v. Castleberry*, 301 Kan. 170, 191, 339 P.3d 795 (2014); *State v. Smith-Parker*, 301 Kan. 132, 135, 340 P.3d 485 (2014); *State v. McCune*, 299 Kan. 1216, 1234-35, 330 P.3d 1107, *cert. denied* 135 S. Ct. 457 (2014). We are bound to follow this precedent. See *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012).

*Conclusion*

Based on the analysis set forth above, we affirm in part, vacate in part, and remand with directions. Because we find no merit in Kimberlin's claims of prosecutorial misconduct, erroneous jury instructions, and use of criminal history in sentencing, we affirm Kimberlin's convictions. Nevertheless, we vacate the sentences imposed for his felony convictions and remand with directions for the district court to resentence Kimberlin by designating either Count 2 or 4—both of which are presumptive imprisonment crimes pursuant to the special rule in K.S.A. 2014 Supp. 21-6805(f)(1)—as the primary crime. Given it is undisputed by the parties that the journal entry of judgment erroneously reflects that the district court ordered Kimberlin's misdemeanor sentences to run consecutively, we remand the matter with directions to correct the journal entry so that it is consistent with the sentence imposed at the sentencing hearing.