NOT DESIGNATED FOR PUBLICATION

No. 125,865

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JASON S. CUNNINGHAM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellsworth District Court; CAREY L. HIPP, judge. Submitted without oral argument. Opinion filed November 8, 2024. Affirmed.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., WARNER and COBLE, JJ.

PER CURIAM: After a jury trial, Jason Cunningham was convicted of several sex offenses involving two girls. He now appeals, claiming that the district court erred when it admitted evidence relating to pornographic videos bookmarked on his cell phone, as well as other evidence of sexual proclivities. He also claims that the prosecutor erred in various ways during closing argument. Cunningham asserts that these alleged errors, both individually and collectively, denied him the right to a fair trial. After carefully reviewing the record and the parties' arguments, we affirm Cunningham's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2022, a jury convicted Cunningham of several sex offenses against two minor children, to whom we refer here under the pseudonyms Jane and Mary.

Cunningham and his former fiancé lived together with five children—including Jane—from around December 2013 to August 2019 in a house in Wilson. The fiancé moved out of the home with Jane and one of the other children in August 2019 due to relationship problems, though she and Cunningham remained romantically involved until March 2020.

On March 5, 2020, when Jane was 10 years old, she told a friend at school that Cunningham was raping her but asked the friend not to tell anyone. Another student overheard Jane's conversation and reported this information to the school counselor, who then alerted the principal. The principal contacted the Wilson Police Department, and an investigation into the allegations against Cunningham immediately began.

A few weeks later, Jane was interviewed at the Child Advocacy Center in Great Bend. During the interview, Jane disclosed that Cunningham had been sexually abusing her since she was four years old and stated that the abuse had continued up until about two weeks before the interview. (We need not recount all the details of Jane's interview here but provide some as necessary to discuss the challenges raised in this appeal.) After the interview, the Wilson police chief reached out to the Kansas Bureau of Investigation for assistance. Special Agent Aaron Hachmeister of the KBI was assigned to the case.

*The KBI investigation*

At the outset of the investigation, Agent Hachmeister reviewed a recording of Jane's interview and spoke with the police chief. He then applied for and obtained a

2

warrant to search Cunningham and his residence. When agents arrived to execute the warrant at his home, Cunningham was not there. KBI agents contacted Cunningham at a nearby gas station and obtained his cell phone under the warrant.

Back at Cunningham's residence, KBI agents seized several computers from a bedroom. They also found a pair of children's underwear in a plastic cabinet in the back of a walk-in closet next to adult pornography videos and a box of sex toys. And an agent took a picture of the living room television, which was hooked up to an Xbox gaming system and displaying an animated pornographic videogame accessed through the internet application. The picture showed animated images of four nude women.

A KBI agent then conducted a digital forensic investigation on Cunningham's electronic devices. This involved extracting the data from Cunningham's cell phone and computers using a program called Cellebrite, which essentially takes all the data that is extracted from a device—such as phone calls, internet search history, bookmarks, and texts—and organizes it into a readable report.

Agent Hachmeister reviewed the Cellebrite report, which contained information relevant to the case including 11 pornographic videos or images that were bookmarked on Cunningham's cell phone. Hachmeister also noticed a video on a computer of Jane's mother having sex with another man. This video stood out to Hachmeister because in Jane's interview, she shared that Cunningham showed her a video that met this description.

Through its investigation, the KBI also came into contact with three other women who alleged that Cunningham had molested them when they were minors—Mary and two others. In a 14-count criminal complaint, the State charged Cunningham with several sex offenses against Jane and Mary.

*Pretrial motion to admit evidence under K.S.A. 60-455(d)*

Before trial, the State filed a motion to admit evidence of uncharged acts of sexual misconduct discovered during the KBI investigation. In a memorandum in support of that motion, the State explained that it sought to admit the titles of the pornographic videos Cunningham had bookmarked on his cell phone, including: "Dad Fucks Sleeping Step Daughter 01" and "Took my step daughters virginity—Raw Confessions." According to the State, this evidence was relevant to show Cunningham's sexual desires and could be construed as evidence of other bad acts that was subject to K.S.A. 60-455. The State also asked to admit testimony from the other two women who alleged Cunningham had molested them, even though these women were not named in the complaint.

The district court held a hearing to address the State's K.S.A. 60-455(d) motion. At that hearing, Cunningham argued that while Agent Hachmeister testified at the preliminary hearing that he watched three or four of the videos on a KBI computer and believed they depicted child pornography, the agent did not preserve the videos so they could be viewed later. Cunningham's attorney stated that he "[didn't] know really what relevance" the video titles alone would have and noted that the titles were "pretty prejudicial." The court disagreed on both grounds and granted the State's motion to allow the titles of the bookmarked videos to come in at trial. The court also allowed testimony from the other two women about the past abuse.

*The jury trial*

Cunningham's case proceeded to a jury trial. Over the course of five days, the jury heard testimony from Jane, Cunningham, Agent Hachmeister, the agent who had conducted the digital forensic extraction, Mary, and the other two women who claimed Cunningham had molested them as minors, as well as many others. The jury was also

4

presented with photographs of Cunningham's residence, the children's underwear, and the box of sex toys found in his closet.

Jane was 12 years old at the time of trial. She testified about Cunningham's sexual abuse, which started when she was four. She explained that the first incident occurred when her mother had left for work, and Jane asked Cunningham if she could have a popsicle with chocolate syrup on it. At the time, Jane was crying very hard, making her vision blurry. Jane believed Cunningham was holding a popsicle and so she started to lick it. Jane testified that she now knows that "it was not a popsicle." During her interview, Jane explained that Cunningham had put chocolate syrup on his penis, sat down on the couch, and told Jane that it was a popsicle.

Jane testified about several other incidents that took place between the ages of six and nine. She recalled that Cunningham once made her remove all her clothes and stared at her. Cunningham also made Jane stroke his penis with her hand when they were alone on Christmas morning. Jane stated that Cunningham once placed his hand and penis on her bottom while she was in the laundry room taking her clothes out from the dryer. Jane also recalled that Cunningham tried to get on top of her while she was sleeping in the basement. When Jane was lying down so that Cunningham could apply medicine to a scrape on her back, she believed Cunningham rubbed "sperm" on her instead. She also testified that one day, while she was home sick from school, Cunningham made her shower with him and tried to lick her vagina and grab her chest. When Jane was asked how she knew Cunningham was trying to lick her vagina, she responded "[b]ecause it's happened before."

Jane testified that Cunningham had shown her a box of sex toys from his closet and forced her to watch him use one on himself. She also stated that Cunningham showed her videos of people having sex and that the first one involved a dad and daughter and was titled something like "Father's Day present." And Jane shared that Cunningham

5

showed her a video of her mom and his friend having sex. The State played Jane's interview to the jury, which repeated much of this same information.

The jury also heard from Mary—the other minor the State charged Cunningham with molesting. Mary testified that when the incident occurred, she lived next door to Cunningham and was his daughter's best friend. Mary explained that one night when she was staying the night at Cunningham's house with his daughter, she woke up to Cunningham's hands down her pants and shirt, touching her vagina and breasts under her clothes and inside her underwear. Cunningham stopped when Mary woke up and told her not to tell anybody.

The jury heard about the KBI investigation, including the digital investigation of Cunningham's electronic devices and the use of Cellebrite. The State introduced evidence of the titles of the pornographic bookmarks found on Cunningham's cell phone. And the State offered pictures from their investigation, including the picture of Cunningham's television screen projecting a pornographic animated videogame from his Xbox.

Cunningham testified, denying all the allegations against him. When Cunningham was asked if he was familiar with an incident involving a popsicle, he responded "Yes." Cunningham explained that his former fiancé had questioned him extensively about the incident, which Jane had told her about. He also stated that all the sex toys collected as part of this case were his, but he denied ever owning one of the sex toys Jane had described. And Cunningham admitted that he recorded the video of his former fiancé having sex with another man, but he denied showing that video to Jane.

The jury found Cunningham guilty of two counts of aggravated criminal sodomy; two counts of promoting obscenity to a minor; and one count each of attempted aggravated sodomy, attempted aggravated indecent liberties with a child, indecent liberties with a child, aggravated indecent liberties with a child, and aggravated

6

intimidation of a witness. The district court imposed a controlling sentence of life imprisonment without the possibility of parole for 50 years, followed by a consecutive 32 months of imprisonment. Cunningham appeals.

DISCUSSION

Cunningham's appeal presents two broad categories of issues. First, he challenges the district court's evidentiary rulings under K.S.A. 60-455, claiming the court erred when it admitted the evidence relating to the titles of the pornographic videos Cunningham had bookmarked on his phone and the photograph of the Xbox display on his television. And second, he asserts that the prosecutor committed reversible error during closing argument. Cunningham claims that these errors either individually or cumulatively deprived him a fair trial. We consider these claims in the order presented in the briefs.

1. *Cunningham's evidentiary challenges*

Cunningham challenges the district court's decision admitting the titles of the pornographic videos bookmarked on and extracted from his cell phone during the Cellebrite investigation and the photograph of his television displaying naked women in the animated videogame display from an Xbox. He asserts that this evidence was of limited relevance and was highly prejudicial, and thus should have been excluded.

In Kansas, all relevant evidence is admissible at trial "'[u]nless prohibited by statute, constitutional provision, or court decision.'" *State v. Scheetz*, 318 Kan. 48, 63, 541 P.3d 79 (2024); see K.S.A. 60-407(f). Evidence is relevant if it is both probative and material to the case—that is, if it "'has any tendency in reason to prove a fact'" (probity) that "'has a legitimate and effective bearing on the decision of the case and is in dispute'" (materiality). 318 Kan. at 64; see K.S.A. 60-401(b). Appellate courts review a district

7

court's decision on probative value for abuse of discretion, but we exercise plenary review over a district court's materiality determination. *State v. Boleyn*, 297 Kan. 610, Syl. ¶ 1, 303 P.3d 680 (2013).

Once relevance is established, a district court applies constitutional, statutory, and common-law evidentiary rules to determine whether the evidence should be admitted or excluded. *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 (2006). As Cunningham notes, Kansas law "generally prohibits evidence of a person's crime or civil wrongs on a particular occasion from being used as proof of that person's tendency to commit another crime or civil wrong on a separate occasion." *Scheetz*, 318 Kan. at 53-54; see K.S.A. 2023 Supp. 60-455(a). But K.S.A. 60-455(d) provides an exception to this prohibition: "[E]vidence of the defendant committing 'another act or offense of sexual misconduct' [is] admissible and [may be] 'considered for its bearing on any matter to which it is relevant and probative' in criminal cases involving sex offenses." *Scheetz*, 318 Kan. at 54.

Even when evidence is relevant and may otherwise be admissible, a district court has discretion to exclude it from trial if "its probative value is substantially outweighed by its potential for producing undue prejudice." *State v. Miller*, 308 Kan. 1119, 1167, 427 P.3d 907 (2018). The party asserting prejudice—here, Cunningham—must prove that the court abused its discretion in weighing those factors. *State v. Alfaro-Valleda*, 314 Kan. 526, 535, 502 P.3d 66 (2022).

### 1.1. *The bookmarks*

We begin with Cunningham's challenge to the admission of the titles of the bookmarked videos extracted from his cell phone. Cunningham's arguments concerning this material have evolved during this appeal. As we have noted, the State filed a pretrial motion to admit the titles of the bookmarked pornographic material extracted from Cunningham's cell phone, arguing that it should be admitted as evidence of his sexual

desires. The district court granted the motion and allowed the titles to be read at trial. Nevertheless, the court granted Cunningham a standing objection to the State's use of this evidence based on his previous objections—relevance and undue prejudice.

At trial, the State introduced the bookmarks through Agent Hachmeister. The State asked Hachmeister if he found any bookmarks that were relevant to this case. He responded "Yes" and read their titles from the Cellebrite report to the jury:

> "So I observed a total of 11. No. 1, 'Daddy Teaching Daughter How to Suck and Fuck'; No. 2, 'Daughter Caught Fucking on Hidden Cam'; No. 3, 'Father and Daughter Having Sex'; No. 4, 'Father Fucking His Drunk Stepdaughter'; No. 5, 'Father Raping His Daughter'; No. 6, 'Little Sister Blow Job'; No. 7, 'Rape'; No. 8, 'Real Rape'; No. 9, 'Glory Hole Cream Pie'; No. 10, 'Sister Sucking Brother'; No. 11, 'Virgin Teen Getting Her First Cock.'"

Agent Hachmeister confirmed that those titles were each bookmarked on Cunningham's cell phone. At the close of trial, the district court instructed the jury on the limited purpose for which that evidence could be considered.

In his initial appellate brief, Cunningham argued that the district court erred by admitting the bookmark evidence under K.S.A. 60-455(d) because his internet searches were not "an act or offense of sexual misconduct" as defined by K.S.A. 60-455(g). In his reply brief, Cunningham concedes that he did not object to the admission of the bookmarked evidence on this basis at trial, but rather raised more general objections based on the evidence's relevance and potential for undue prejudice. As our Kansas Supreme Court noted in *Scheetz*, K.S.A. 60-404 prohibits a challenge to the admission of evidence not raised before the district court from being considered on appeal. See 318 Kan. at 59 ("Preserving an evidentiary challenge under K.S.A. 60-404 requires a timely and specific objection. It is not optional."). Cunningham has thus limited his appeal to his

objection at trial—that this evidence was not relevant to his case and that any probative value it had was far outweighed by its prejudicial effect.

Cunningham first argues that the titles of the videos he bookmarked are of limited relevance, as his viewing of certain types of pornography did not mean that he had a propensity to engage in the behavior depicted in those videos. In support, he cites *State v. Smith*, 299 Kan. 962, 327 P.3d 441 (2014); *Boleyn*, 297 Kan. 610; and *State v. Ewing*, No. 118,343, 2019 WL 1413962 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1066 (2019). But while this case was pending on appeal, the Kansas Supreme Court rejected this argument in *Scheetz*, which involved analogous facts to Cunningham's case.

Scheetz lived with his girlfriend and was charged with several crimes after he sexually abused her minor daughter. At trial, the State introduced evidence under K.S.A. 60-455(d) of Scheetz' pornographic internet search history, including titles such as "'Step Dad started blowing me at age 5.'" 318 Kan. at 64. The Kansas Supreme Court found that this evidence was relevant because "sexual exploitation of a child requires the State prove sexual attraction beyond a reasonable doubt," and Scheetz' sexual desire for underage girls was a material fact in the exploitation charges. 318 Kan. at 64.

Cunningham argues that *Scheetz* merely recognized an exception to the "general rule" against pornography's relevance to a person's sexual desires when a person is charged with sexual exploitation of a child under K.S.A. 21-5510(a)(2)—a charge Cunningham did not face. We do not read *Scheetz* so narrowly.

Although Scheetz was charged with sexual exploitation of a child under K.S.A. 2019 Supp. 21-5510(a)(2) and Cunningham was not, the court did not hold that evidence of pornographic searches could *only* be relevant to prove an element of that crime. Rather, *Scheetz* held that such evidence admitted under K.S.A. 60-455(d) may be relevant to a person's sexual desires when those desires are material facts necessary to prove an

element of a charged offense. See *Scheetz*, 318 Kan. at 67. *Scheetz* rejected the argument that the cases Cunningham relies on here established a blanket rule that a person's pornography preferences are irrelevant to proving their sexual desires. 318 Kan. at 65.

Returning to the facts of this case, Cunningham's intent to arouse or satisfy his sexual desires was an element of multiple charges against him.

- Count 6—attempted aggravated indecent liberties with a child under K.S.A. 21-5506(b)(3)(A) (Aggravated indecent liberties with a child is "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to *with the intent to arouse or to satisfy the sexual desires of either the child or the offender*."). (Emphasis added.)

- Count 8—aggravated indecent liberties with a child under K.S.A. 21-5506(b)(3)(A) and (c)(3) (Aggravated indecent liberties with a child is "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to *with the intent to arouse or to satisfy the sexual desires of either the child or the offender*."). (Emphasis added.)

- Count 11—lewd and lascivious behavior under K.S.A. 21-5513(a)(2) and (b)(2) (Lewd and lascivious behavior is "publicly exposing a sex organ or exposing a sex organ in the presence of a person who is not the spouse of the offender and who has not consented thereto, *with intent to arouse or gratify the sexual desires of the offender or another*."). (Emphasis added.)

The bookmarks extracted from Cunningham's cell phone were relevant to whether Cunningham committed these charged offenses. They were probative because they showed Cunningham's interest in sexual relationships and young girls, involving in some instances a relationship akin to that between Cunningham and Jane. The bookmarks were

11

also material because Cunningham's intent to arouse or satisfy his sexual desires was an element of several offenses charged.

Cunningham also asserts that the evidence was not relevant because the State presented no evidence about how long he accessed the bookmarked webpages, whether he even watched the videos, or what material was displayed on the bookmarked websites when he accessed them. And Cunningham argues that several titles have no apparent relation to the underlying charges, including "searches related to sibling incest and a search related to anonymous public sex: 'Glory Hole Cream Pie.'"

The Kansas Supreme Court rejected these arguments in *Scheetz*. 318 Kan at 65. As in *Scheetz*, the issue here is not whether Cunningham watched specific portions of the videos or viewed them. The titles of the bookmarks were introduced to show that he searched for them on the internet and bookmarked them on his phone—something Cunningham does not dispute. *Scheetz* also noted that a jury's exposure to irrelevant search terms does not shift the analysis since an attorney could have asked for that information to be redacted. 318 Kan at 65. Cunningham's attorney did not. And some of the titles are relevant for other reasons. For example, Jane stated in her Child Advocacy Center interview that Cunningham showed her a video called "Cream Pie" about "teens having affairs with their dads." In short, the district court did not err when it concluded that the bookmarked titles were relevant to the charges in this case.

Cunningham also argues that even if these bookmarks were relevant, they were inflammatory and unduly prejudicial. Cunningham likens his case to *Miller*, where the court held that the district court erred by admitting two pornographic photos into evidence during a murder trial because they would have repulsed the jurors and "the connection between the defendant's commercial pornography collection and his desire to murder his wife is tenuous at best." *State v. Miller*, 284 Kan. 682, 701, 163 P.3d 267 (2007). As the State notes, the connection between the bookmarked titles and the charged

offenses here is much closer. And though the content of those titles was offensive, so were the charges facing Cunningham. Cunningham has not shown that the district court abused its discretion in finding that the potential for undue prejudice did not substantially outweigh the probative value of admitting this evidence.

1.2.    *The Xbox photograph*

Cunningham also challenges the admission of the photograph taken during execution of the search warrant of Cunningham's residence that showed an animated pornographic videogame accessed through an Xbox and displayed on Cunningham's television. The State moved to admit this photograph at trial when discussing the digital investigation of Cunningham's electronic devices. Cunningham objected on the grounds that the photo had "[n]o probative value" and was "highly prejudicial." The district court overruled this objection and admitted the photograph.

Cunningham asserts that the Xbox photo was not relevant because it "displays animated drawings of four adult women and as such, has no discernable relation to the underlying charges." The State counters that the photo was probative because it could show Cunningham's sexual predisposition and because it was recently accessed. And the State adds that the photo was material because it established the "sexual arousal" element of several of the crimes.

We agree with Cunningham that the connection between this photograph and the charges here is much more tenuous than the bookmarks previously discussed. The photograph shows four nude women; it does not display children or incestual relationships. As such, it is unclear how the photograph shows that Cunningham was sexually aroused by underage children as the State suggests.

13

But even if we presume that the admission of this photograph was error because it was not relevant to the crimes charged here, Cunningham has not shown that its admission affected the outcome of his trial. See K.S.A. 2023 Supp. 60-261; *State v. McCullough*, 293 Kan. 970, 981-83, 270 P.3d 1142 (2012). The Xbox photograph had little if any impact on the trial in this case. The State did not argue that this photograph showed any sexual propensity by Cunningham. Instead, the State relied on the other evidence presented to the jury: the detailed testimony of Cunningham's interactions with Jane and Mary, as well as his molestation of two other women when they were children; Jane's interview and the items found in Cunningham's closet that corroborated her story; and evidence of Cunningham's sexual desires through the bookmarked titles on his cell phone. Thus, any error in the admission of the Xbox photograph was harmless.

2. *Prosecutorial error*

Cunningham next claims that the prosecutor undermined the fairness of his trial by committing two errors during closing argument. He asserts that the prosecutor impermissibly opined about Jane's credibility and improperly asked the jurors to place themselves in Cunningham's position when weighing certain evidence.

Appellate courts use a two-step analysis when reviewing claims of prosecutorial error. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). We first determine whether the prosecutor's comments or conduct fell outside the wide latitude afforded to attorneys in arguing a case. 305 Kan. at 109. If the prosecutor erred, we evaluate whether that error requires reversal under the traditional constitutional harmlessness test in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *Sherman*, 305 Kan. at 109. With this background, we turn to Cunningham's arguments.

14

## 2.1. *Jane's credibility*

"'In general, a prosecutor may not offer a jury the prosecutor's personal opinion as to the credibility of a witness because such a comment is unsworn, unchecked testimony, not commentary on the evidence of the case. The determination of the truthfulness of a witness is for the jury.'" *State v. King*, 308 Kan. 16, 30-31, 417 P.3d 1073 (2018) (quoting *State v. Akins*, 298 Kan. 592, Syl. ¶ 6, 315 P.3d 868 [2014]).

In *State v. Charles*, 304 Kan. 158, 175, 372 P.3d 1109 (2016), *abrogated on other grounds by State v. Huey*, 306 Kan. 1005, 399 P.3d 211 (2017), the Kansas Supreme Court warned prosecutors that they were "on notice that any temptation to say 'I think' should be rebuffed and replaced with 'the evidence shows' or 'I submit' or a similar, less potentially subjectively loaded phrase." This way, the jury may independently assess the evidence rather than rely on the prosecutor's opinion of it. The Kansas Supreme Court has also cautioned against using the phrase "'we know'" during closing argument when making inferences for the jury about controverted evidence. *King*, 308 Kan. at 34.

But a prosecutor's comments are considered in context rather than in isolation. *State v. Davis*, 306 Kan. 400, 413, 394 P.3d 817 (2017). For example, in *King*, the Kansas Supreme Court found no error when the prosecutor stated: "'*I believe* the evidence from the video shows that he was hit repeatedly with a gun.'" (Emphasis added.) *King*, 308 Kan. at 33. The court explained that "[t]he prosecutor was not advancing her personal opinion, but simply hedging her statement as she was describing the evidence." 308 Kan. at 33. In contrast, the court found that the prosecutor crossed the line by stating: "'*I think* there's sufficient evidence for you to find beyond a reasonable doubt that these two defendants . . . committed the following crimes.'" (Emphasis added.)" 308 Kan. at 33 (declining to find error because prosecutor was not placed on notice that such comments were improper).

15

Cunningham first asserts that the prosecutor impermissibly interjected her opinion about Jane's credibility when discussing Count 1, aggravated criminal sodomy:

"As far as the charges, these are the charges where the State believes the evidence fits. In Count 1, the defendant is charged with aggravated criminal sodomy. The State believes this is shown to you what's been described or referred to as the chocolate popsicle incident throughout a lot of the testimony.

"In that the State has to prove that the defendant engaged in sodomy with [Jane] . . . . *So if the event happened, which the State believes that it did* and we believe that the evidence supports, you know that she had to have been less than 14. . . .

"*So we believe* that this evidence fits, because [Jane] told you that it happened. She told you that she was about four years old when this happened, and that's where the dates come from in the instruction. It has to be that the State proves to you that the event happened between the 24th day of March, 2014, and the 23rd day of March, 2015. . . .

". . . The State believes that the evidence supports this charge because [Jane] has repeatedly told people that this happened." (Emphases added.)

Cunningham points out that the "event" the prosecutor was referring to in the second paragraph was when Cunningham put chocolate syrup on his genitals and made Jane lick it off under the pretense that it was a popsicle. And by stating that "[s]o if the event happened, which the State believes that it did," the prosecutor told the jury the State believes Jane's allegations. He adds that this statement was compounded by the prosecutor's later comments: "So we believe that this evidence fits, because [Jane] told you that it happened" and "The State believes that the evidence supports this charge because [Jane] has repeatedly told people that this happened."

In contrast, the State suggests that this was not error because the prosecutor told the jury the State believed the evidence supported that Cunningham was guilty of aggravated criminal sodomy—not that Jane's testimony was particularly credible. We find the State's argument compelling.

16

During her closing argument, the prosecutor was simply directing the jury to evidence which it could assess—in its discretion—that she believed supported the aggravated criminal sodomy charge. This evidence happened to include Jane's testimony. But the prosecutor never offered her personal opinion about Jane's credibility.

Moreover, each time the prosecutor said "we believe" or "the State believes" she followed those words with "the evidence supports" or "the evidence fits." The Kansas Supreme Court has held that a prosecutor may argue that evidence demonstrates a defendant's guilt so long as the prosecutor says "something akin to 'the evidence shows defendant's guilt' in order to make a statement merely directional and not an expression of the prosecutor's personal opinion." *State v. Peppers*, 294 Kan. 377, 400, 276 P.3d 148 (2012); see, e.g., *State v. Mann*, 274 Kan. 670, 688-89, 56 P.3d 212 (2002) (approving of prosecutor's closing argument stating that "'[t]he [S]tate believes that [the victim] was killed with premeditation intentionally, first degree, and this is why,'" which began a discussion of the relevant evidence).

The prosecutor's phrasing was perhaps inartful—the use of "we believe" and "the State believes" were unnecessary filler language. But the prosecutor did not impermissibly interject her opinion about Jane's credibility. Instead, she directed the jury to evidence demonstrating Cunningham's guilt, including Jane's testimony, for the jury to assess in entering its verdict on the aggravated criminal sodomy charge.

2.2. *The alleged "golden rule" argument*

"A 'golden rule' argument . . . is the suggestion by counsel that jurors should place themselves in the position of a party, a victim, or the victim's family members." *State v. Lowery*, 308 Kan. 1183, Syl. ¶ 5, 427 P.3d 865 (2018). The Kansas Supreme Court has instructed that these arguments are "generally improper because it encourages the jury to decide the case based on personal interest or bias rather than neutrality." 308 Kan. 1183,

17

Syl. ¶ 5. A prosecutor should also refrain from making statements that seek "to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law." 308 Kan. 1183, Syl. ¶ 5.

Cunningham asserts that the prosecutor violated the golden rule by asking the jury to put themselves in his position when she discussed Jane's story that Cunningham had covered his penis in chocolate syrup and pretended it was a popsicle:

> "We found out yesterday from the defendant that he was accused of doing that before. How many of you have been accused of something inappropriate involving a popsicle that he says happened when she was four or five? That corroborates what [Jane] has described, that there was an incident with a popsicle."

Cunningham argues that the prosecutor was using this argument to tell the jury that it would corroborate Jane's allegations against Cunningham if none of the jurors had been accused of similar behavior with a popsicle. Cunningham maintains that the jury was thus forced to conclude that if they had not been falsely accused of a sex offense, then false allegations are rare, so Jane's allegations were credible. The State counters that this was not a golden rule argument because the prosecutor was just asking the jurors to use their common knowledge and experience—as they had been instructed by the court.

The State makes the better argument. To start, it is unclear how the prosecutor asked the jury to put themselves in Cunningham's shoes. Instead, the prosecutor was pointing out the specific facts of the allegations against Cunningham and noting that those facts had been consistent throughout the course of the case. Nor does the statement appeal to the jurors' sympathy or ask the jurors to consider facts outside the evidence. It merely appealed the jurors' common sense to consider whether the story was believable. The prosecutor did not make an impermissible "golden rule" argument.

Cunningham has not shown that the prosecutor veered outside the arguments that are permissible in closing argument. As such, we need not determine whether these arguments had any effect on Cunningham's trial.

3.  *Cumulative error*

In his final argument, Cunningham asserts that even if the arguments he raised do not individually undermine his trial, the cumulative effect of the errors he alleged in this appeal warrants reversal of his convictions. See *State v. Showalter*, 318 Kan. 338, 364, 543 P.3d 508 (2024). But there are not multiple transgressions to consider here because Cunningham has demonstrated only one error—the admission of the Xbox photograph. Thus, Cunningham's arguments as to cumulative error are unavailing. *State v. Cofield*, 288 Kan. 367, 378, 203 P.3d 1261 (2009).

No trial is perfect. But a defendant is entitled to a fair trial, not a perfect one. *State v. Cruz*, 297 Kan. 1048, 1075, 307 P.3d 199 (2013). After carefully reviewing the record, we find that Cunningham received a fair trial under the law, and we affirm his convictions.

Affirmed.